### CLARK *vs.* NIBLO.

Special bail, sued on their recognizance, may insist, by way of *plea* in bar of the action, that before a breach of the condition of the recognizance, an agreement was entered into by the plaintiff that the defendant in the original action might depart the state, and that no proceedings should be had in such action until his return.

If such agreement is made with the knowledge and consent of the bail, it is founded on a sufficient consideration, and the remedy of the plaintiff is suspended until the return of the defendant: if made with the defendant only, without the privity or consent of the bail, the latter is absolutely discharged, as it would be a *fraud* upon him for the plaintiff to induce the defendant to leave the state under such circumstances, and then to proceed against the bail.

The court in which the original proceedings were pending might in such case set aside a *ca. sa.* and the sheriff's return thereon, or order a stay of proceedings until the return of the defendant; or a court of chancery might grant relief.

ERROR from the supreme court. Clark sued Niblo in the common pleas of New-York on a *recognizance of bail*, Niblo being the special bail of one King in a suit commenced

against King by Clark.   The declaration in the suit against Niblo was entitled of *February term,* 1828.   Niblo pleaded, 1. *Nil debet ;* 2 The death of King before the suing out of a *capias ad satisfaciendum,* to wit, on the 20th January, 1828; and 3. That after the recovery of the judgment against King, and *before the return* of a *capias ad satisfaciendum* thereupon, to wit, on the 1*st December,* 1827, the plaintiff gave license and permission to King to depart and proceed from the city of New-York to Mobile in the state of Alabama, and agreed with King that all proceedings upon the judgment should be stayed until his return from Mobile.   The defendant averred that thereupon King, *before* the issuing of a *capias ad satisfaciendum* against him, to wit, on the day and year last aforesaid, did depart and proceed from the city of New-York to Mobile aforesaid, and that he had not since returned.   To these pleas was attached a notice of special matter intended to be given in evidence on the trial, embracing substantially the same defence contained in the special plea.   To the *first* and *third* pleas the plaintiff *demurred* generally, and to the *second* plea replied, that on the 17th December, 1827, he sued out and delivered to the sheriff a *capias ad satisfaciendum* against King, returnable on the third Monday of January then next ; that the sheriff returned that he was not found in his bailiwick ; and that at the suing out and return of the said writ, King was living, to wit, at New-York, &c.   The common pleas gave judgment for the plaintiff on the demurrers, and awarded a *venire tam quam ;* the plaintiff had a verdict, and judgment was rendered in his favor.   The defendant Niblo sued out his writ of error to remove the record into the supreme court, where the judgment of the common pleas was *reversed.*   See the opinion delivered in the supreme court, 3 *Wendell,* 24.   Whereupon Clark sued out a writ of error to this court.

*O. Bushnell & D. B. Tallmadge,* for plaintiff in error.   The agreement of the plaintiff that the defendant in the original suit might depart from the state, and that all proceedings in the suit against him should be stayed until his return, being unsupported by a consideration, was *void,* and could not have

been enforced by the defendant; and if not by him, it was unavailable to his *bail.* The case of *Rathbone* v. *Warren*, 10 *Johns. R.* 594, relied on by the supreme court, does not support the decision; for there the agreement was founded on a good and valid consideration, and the judge who delivered the opinion of the court, expressly said that the decree which had been made must rest entirely on the agreement founded on a valuable consideration, and could not be supported on the agreement, which had no such foundation. Sureties cannot avail themselves of an extension of the time of payment of a debt given to their principal, unless given by virtue of a contract founded on sufficient consideration, which can be enforced by the principal; 2 *Johns. Ch. R.* 554; 3 *Kent's Comm.* 77; 12 *Wheaton,* 554; 15 *Johns. R.* 433; nor can *bail,* who stand in no more favorable light before the court than do sureties, avail themselves of such an extension of time, unless the plaintiff, by a valid agreement, has disarmed himself so that he cannot proceed against the defendant. 5 *Taunt.* 614. 7 *id.* 53, 126.

Admitting the agreement in this case to be valid, the defence relied on cannot be set up by way of *plea* in a court of law; the remedy of the party was by *motion* appealing to the equitable powers of the court, or by bill in equity. A judgment can be discharged only by matter of as high a nature. *Bacon's Abr. tit. Release.* A bond cannot be discharged by a parol release, 20 *Johns. R.* 462; and it has accordingly been held in England, that a defendant in a suit who becomes bankrupt and obtains his discharge, and his bail are afterwards sued, whether the discharge be before or after the bail have become fixed, relief to the bail can be obtained only by *motion;* 3 *Taunt.* 46; 5 *id.* 614; 6 *id.* 75; 7 *id.* 126; 1 *Barn. & Ald.* 332; and such has been the practice here, 4 *Johns. R.* 409. So also where, in an action of debt on recognizance against the bail, the bankruptcy and certificate of the defendant in the original action, before the return of the *ca. sa.* against him was pleaded in bar, the plea was held bad on demurrer; *Donnelly* v. *Dunn,* 1 *Bos. & Pul.* 448, *and note,* and 2 *id.* 45, *S. C.*; and the reason assigned why the plea should not be allowed was, that the question by such

ALBANY,
Dec. 1830.

Clark
v.
Niblo.

course is narrowed down to a single point; whereas, if it was presented by motion, the plaintiff might be heard by opposing affidavits, and the court would have the whole merits of the case before them. In *Dorneville* v. *Mearns*, 7 *East*, 148, the attempt to plead matter of defence at law, which belonged to the equitable jurisdiction of the court, was animadverted upon by *Lawrence*, justice. In *Davy and others* v. *Pendergrass*, 5 *Barn. & Ald.* 187, which was an action of debt on bond against a *surety*, the defendant pleaded *time given* to the principal, by parol agreement, on good consideration. The plaintiff demurred, and the court held that the plea could not be sustained, and that the remedy of the defendant was by *motion*. The case of *Bulteel* v. *Jarrold*, 8 *Price's R.* 467, is directly in point. There, in an action of debt on recognizance against bail, it was pleaded that the plaintiff, without the privity of the bail, entered into an agreement for a valuable consideration with the defendant in the original suit, to give him 12 months for the payment of the debt; and on demurrer, it was holden that the defence was unavailable by plea at law, and that the bail must seek his remedy in equity. Besides, the plea is bad in not averring that the agreement was made without the knowledge or privity of the bail.

*J. L. Wendell*, for defendant in error. The agreement was valid, and might have been enforced by the defendant in the original suit. Damage, risk, or loss to one party furnishes as substantial a basis for the support of a contract as profit or benefit to the other. If the defendant in the original suit by the violation of the agreement might be subjected to damage, this was enough to support the agreement. Besides, it was an *executed* and not an *executory* contract; the defendant upon the faith of it had left the country and exposed his bail to loss.

The conduct of the plaintiff below was such as to subject him to the charge of *fraud*. On the *first* of December he induced the defendant to depart from the state, under a promise that all proceedings in the suit against him should be stayed until his return; on the *seventeenth* of the same month, in violation of the principles of honesty and good faith, he com-

menced proceedings to fix the bail with the payment of the debt, who in about a month afterwards became legally fixed, in consequence of his inability to surrender the defendant, placed beyond his reach by the management and procurement of the plaintiff. Justice required that the bail should be relieved, and that relief be sought by plea. It is admitted that according to the law as understood in England, he should have applied by *motion*, or *bill in equity*; here, however, it is otherwise. With us *bail* and *sureties* may, by *plea*, avail themselves of defence of this nature, which, in England, can be presented only by motion, or bill in equity. In *The People* v. *Jansen*, 7 *Johns. R.* 332, which was an action of debt on bond against the heirs of a *surety*, and in which the defendant relied on the *laches* of the creditor in demanding an account, Mr. Justice *Thompson*, in delivering the opinion of the court, said : "I am unable to discover any good reason for sending the defendants into a court of chancery for relief. There is nothing in the nature of the defence to make it peculiarly a subject of equity jurisdiction. Whatever would exonerate the security in the one court ought also in the other. The facts being ascertained, the rule of law must be the same in this court as in the court of chancery;" and the defence was sustained. Next came the case of *Rathbone* v. *Warren*, 10 *Johns. R.* 587, decided in this court. It was a case of bail, similar in most of its features with the present case. The bail filed a bill in equity, praying an injunction as to proceedings against him on the recognizance. The injunction was allowed and made perpetual. The plaintiff appealed, and the court affirmed the decree. It is undeniable that Mr. Justice *Spencer*, in delivering the opinion of the court, based his decision upon the fact that the agreement was a valid agreement ; but he did not place it upon that ground alone, but said that on principles of good faith and common honesty, the act of the plaintiff should be deemed an exoneration of the bail. The next case which arose in our courts was *Pain* v. *Packard*, 13 *Johns. R.* 174, where the court held that a plea by a *surety* that the plaintiff had neglected to proceed against the principle who was then *solvent*, and who subsequently became *in-*

*solvent,* was *a good defence at law,* and the same principle was subsequently recognized in *King* v. *Baldwin* 17 *Johns R.* 384, in which the doctrine of leaving the party in such cases to seek his remedy in equity was fully considered by Chief Justice *Spencer,* who comes to the conclusion that a court of law has cognizance of such cases, and that the defence may be interposed by way of plea. Bail are regarded with more favor by courts than even sureties. A mere neglect to proceed against the principal without request to do so, will not discharge the surety, but bail will be relieved when the neglect has existed for a number of years. 4 *Johns R.* 478. The omission to state that the agreement was without the knowledge or consent of the bail, was mere matter of form.

The common pleas erred in overruling the plea of *non debet;* the judgment of the supreme court ought therefore to be affirmed. The plea was bad in *form,* but good in *substance,* and should have been sustained. 1 *Chitty,* 515, *Lawes on Pl.* 401, 529. 19 *Johns. R.* 300.

By the CHANCELLOR. The plea of *nil debet* to an action of debt on recognizance of bail was clearly bad, even on general demurrer; although it would have been cured by verdict, had issue been taken on it. The action here is founded upon the records of the judgment and of the rrecognizance of bail, the existence of which, if properly put in issue, are triable by the court only; but by this plea they are mixed up with matters of fact to be tried by a jury. This by the old law could not be done, and such a plea was held bad in substance if demurred to, although good after verdict. *Dring* v. *Respass,* 2 *Keble,* 160. 1 *Siderfin,* 302. 1 *Lev.* 193, *S. C. Tyndal* v. *Hutchinson,* 3 *Lev.* 170. *Bullis* v. *Giddins,* 8 *Johns. Rep.* 82, *and cases there cited.* Although the legislature have now authorized such a plea in an action of debt on judgment, for the purpose of giving notice of special matter therewith, or to let in a defence by way of set off, it probably was not their intention to authorize this mode of pleading for any other purpose. 2 *R. S.* 352, § 10; 355, § 20. Those provisions of the revised statutes cannot however con-

trol the decision of this question, which arose and was pass-
ed upon in the courts below before the first of January last.

As the bail was properly precluded from setting up the de-
fence under the notice annexed to the first plea, as the law
then stood, the only material question in this cause is wheth-
er the same matters formed a legitimate ground of defence
to the action as they were specially set out in the third plea.
The substance of that plea is that after the recovery of judg-
ment against the principal, but before any execution had
been taken out against his body, the plaintiff agreed that he
might go out of the jurisdiction of the court to the state of
Alabama, and that all proceedings on the judgment should
be stayed until his return to New-York; that in conse-
quence of this arrangement the principal debtor left the state
before any execution had been issued against his body, and
had not returned at the time this suit was commenced against
the bail.   This is unquestionably a case where the court in
which the original proceedings were pending might properly
have interfered, and have set aside the *ca. sa.* with the sher-
iff's return thereon as having been issued in bad faith; or it
might have ordered a stay of the proceedings against the bail
until after the return of the principal to the city of New-
York.   It is also a case where it would be the duty of a
court of chancery to interfere if the bail had no defence at
law.   In the view I have taken of the facts stated in the spe-
cial plea it is not material for us to enquire whether there
was any consideration passing between the plaintiff and the
principal debtor which would have enabled the latter to re-
cover for a breach of the contract; neither is it of any im-
portance to the decision of this question whether the bail did
or did not consent to the arrangement made with his principal.
If the bail was a party to the agreement, and he was so if it
was entered into with his assent, there was unquestionably a
valuable consideration as to him; for he was induced thereby
to permit the principal to go out of the state, and to continue
his liability as bail for an indefinite period, under an agree-
ment that no proceedings should be had on the judgment for
the purpose of charging him in the mean time, and this con-
sideration of damage, risk or loss to the one party is equally
valid as a consideration of benefit to the other.   *Powers* v.

*Wilson,* 7 *Cowen's Rep.* 274.    *Lent.* v. *Padleford,* 10 *Mass. Rep.* 236, *and per Yates, J.* 3 *Burrows,* 1673. As to what will be a sufficient consideration to support a promise, Serjeant *Williams* says: "Perhaps the best rule is that any damage, or any suspension or forbearance of his right, or any possibility of a loss occasioned to the party by the promise of another is a sufficient consideration for such a promise, and will make it binding, although no actual benefit accrues to the party undertaking. 1 *Saund.* 211, c. *note* 2. If the bail consented to the arrangement, the promise was made for his benefit and on a valid consideration, and it would be contrary to every principle of justice to permit the plaintiff to proceed and charge the bail in direct violation of the promise not to proceed. The remedy against the bail would in that case be suspended, but would not be destroyed, unless the principal died before his return to New-York. If the agreement was made with the principal debtor only, without the privity or consent of the bail, the latter would be absolutely discharged, as it would be a fraud upon him to induce the principal to leave the state, under such circumstances, and then to proceed against his bail in his absence. If this agreement was made with the knowledge and consent of the bail, it was founded on a sufficient consideration and ought not to have been violated; if without his knowledge, it materially varied his responsibility by inducing the principal to leave the state under a belief that his bail would not suffer by his absence, and the latter is discharged by the act of the plaintiff. In such cases where the bail is actually injured by the improper conduct of the creditor amounting to a fraud upon the bail, no consideration as between the creditor and principal debtor is necessary to discharge the surety from his responsibility. *West* v. *Ashdown,* 1 *Bing. R.* 164.

The only remaining question is whether the bail could set up this defence by way of plea to the action of debt on the recognizance, or whether he was bound to apply to the equitable powers of the court where the recognizance was taken, or to the court of chancery. It is unquestionably the settled law of England at the present day, that the fact of the plaintiff's having given time to the

principal, by a parol agreement, is no defence to an action of debt on a *record* or on a *specialty* against the surety in a court of law. This principle is founded on the technical rule that a judgment or contract under seal cannot be discharged by parol. *Davey* v. *Pendergrass*, 5 *Barn. & Ald. Rep.* 187. The case of *Bulteel* v. *Jarrold*, 8 *Price's Rep.* 467, was an action of debt on recognizance of bail where the plaintiff had by a parol agreement with the principal given time for the payment of the debt, and it was decided, successively, by the courts of exchequer, exchequer chamber and house of lords, that the defence could not be pleaded at law, but, as the lord chancellor stated, the plaintiff must seek his remedy in equity. Even in the English courts such a defence may be pleaded to an action at law against the surety on a debt by *simple contract,* though it was formerly otherwise ; and courts of law and equity have now concurrent jurisdiction on this subject. *Per Lord Eldon in Samuel* v. *Howarth,* 3 *Meriv. Rep.* 277.

In the case of *Bulteel* v. *Jarrold,* it does not appear whether the time was given to the principal before or after the bail had become fixed at law by a return of a *ca. sa.* unsatisfied. In the case of *Rees* v. *Berrington*, 2 *Ves. jun.* 543, Lord Loughborough thinks that fact of importance in deciding the question whether the defence can be pleaded at law. And this same distinction is recognized by Judge Washington in the case of *The United States* v. *Howell*, 4 *Wash. C. C. Rep.* 620, where he decided that the bail might set up such a defence at law in an action of debt on a specialty if the agreement with the principal debtor was made before the surety became liable by a breach of the condition of the bond. In the case of *The People* v. *Jansen*, 7 *Johns. Rep.* 337, Thompson, J. says : "I am unable to discover any good reason for sending the defendants into chancery for relief. There is nothing in the nature of the defence to make it peculiarly the subject of equity jurisdiction. That the ancestor of the defendants was *surety* only, appears on the face of the bond, and whatever would exonerate the surety in one court ought also in the other. The facts being ascertained, the rule of

law must be the same in this court as in the court of chancery."

Although the decision of the supreme court in the case of *The People* v. *Jansen*, on the merits of the defence there set up, so far as it established the principle that a mere neglect by the agents of the public to sue the principal debtor discharged the surety, has been overruled by the supreme court of the United States in various suits against the sureties of post-masters and others, yet the objection that the defendant had no remedy at law does not appear to have been noticed by the counsel for the government. And in the case of *Miller* v. *Stewart*, 4 *Wash. C. C. Rep.* 28, 9 *Wheat. R.* 680, *S. C.* the defence that a surety in an official bond was discharged by a change of responsibility, made before the bond became forfeited, was actually sustained on a plea in bar to a suit at law. I am therefore of opinion that in this case, where the arrangement was made with the principal before any breach of the condition of the recognizance, the defence was properly pleaded in bar to the action against the bail. The condition of the recognizance was that the principal should pay the debt or render himself in execution ; in other words, that he should remain within the jurisdiction of the court and in a situation to be arrested by the sheriff whenever the execution should be taken out against the body. The plaintiff by taking out the execution and procuring it to be returned *non est inventus,* while the principal was absent from the state by his procurement· and in violation of his agreement, rendered it impossible for the bail to comply with the condition of the recognizance. I therefore think the decision of the supreme court was correct and should be affirmed.

By Mr. Senator TALLMADGE. In my view of this case, the only points for discussion arise out of the defendant's plea that the plaintiff gave *King,* the principal, license and permission to go to Mobile, and agreed with him that all proceedings on the judgment should be stayed until his return. It is contended by the defendant, under this plea, that bail are surety, and that whatever will discharge the *surety* will discharge the *bail.*

ALBANY,
Dec. 1830.

Clark
v.
Niblo.

The rights and obligations of bail and surety are in many respects similar. The liabilities of both are voluntary, and they frequently incur responsibilities for which they have received no consideration. In other respects their situation and liabilities are different. The liabilty of bail ceases at his pleasure, by a surrender of his principal. Surety, when once bound, can only be relieved by payment of the obligation. Surety take the hazard of the principal's solvency; bail do not, because an insolvent principal can always relieve the bail by a surrender. The death of the principal, before bail are fixed in law, discharges them; it does not discharge surety. Surety have only an indemnity after payment; bail before payment. Surety obtain their indemnity by action, which is tedious and expensive; bail by surrender without action, which is prompt and not expensive. Surety require the aid of a court to help them; bail help themselves. From this it will be seen that the situation of bail is not so hard as that of surety. When, therefore, we are called on to apply in favor of bail the principles that govern surety, let us be careful that we do not *extend* them.

Let us now consider what are the doctrines in regard to surety and bail respectively. First, as to surety: An agreement to give time to the principal beyond the original credit, discharges the surety; but this must be a *valid* agreement, founded on good *consideration:* an agreement that deprives the party of the power of proceeding until the expiration of the stipulated credit. In *Orme* v. *Young, Holt's N. P.* 84, 3 *Com. Law R.* 35, Gibbs, Ch. J. says: "What is forbearance and giving time? It is an engagement which ties the hands of the creditor; it is the act of the creditor, depriving himself of the power of suing by something obligatory." &c. In *King* v. *Baldwin,* 2 *Johns. Ch. R.* 554, Chancellor Kent says: "The established doctrine is, that *delay* in calling on the principal will not discharge the surety, provided that delay be unaccompanied with any settled or *binding* contract for that purpose. All the cases of relief of sureties have gone upon the ground that time was given to the principal by *contract,* without the consent of the surety." This case was reversed in the court of errors, 17 *Johns. R.* 384, but on other

grounds; the principle above quoted remains undisturbed. In 3 *Kent's Com.* 77, the same doctrine is recognized. "Giving time," says the learned commentator, "by the holder to the acceptor of a bill, after the drawer has been fixed, will discharge the other parties to the bill; but the agreement for delay must be one having a sufficient *consideration*, and binding upon the parties." In *M'Lemore* v. *Powell and others*, 12 *Wheaton*, 554, Story, justice, says: "If the holder, after the dishonor of the bill, enters into any new agreement with the drawer for delay, it will discharge him; but the agreement must be one binding in law upon the parties, and have a sufficient *consideration* to support it. An agreement *without consideration is utterly void*, and does not suspend for a moment the rights of any of the parties." *Fulton* v. *Matthews & Wedge*, 15 *Johns.* 433, was an action on a note against a surety. The note was payable on the 1st of January, 1816. Before the note became due, the payee agreed with the principal, who was not taken in this suit, to wait until the spring of 1816. Spencer, J. said: "On the ground, then, that the plaintiff has never been required to prosecute Wedge, and that he has made no contract with him that disables him from suing at *any time*, we are of opinion that the plaintiff must have judgment." As to bail: *Brickwood* v. *Anniss*, 5 *Taunt.* 614, 1 *Com. Law Rep.* 210. The plaintiff had issued his *ca. sa.*, but afterwards agreed to give the defendant three weeks to make a composition with his creditors, and during that time *agreed to suspend arrest upon the ca. sa.* The bail moved to be discharged, on the ground that *time* had been given to the principal. Gibbs, Ch. J. says: "The plaintiff, by remitting his legal diligence, does not bar the bail from surrendering their principal at any moment; the plaintiff has never disarmed himself; he has never put himself in such situation that he *might not* at all times proceed with his action." Motion denied. *Wilson* v. *Whitaker*, 7 *Taunt.* 53, 2 *Com. Law. Rep.* 92. The plaintiff had, after judgment, taken bills of exchange at four, eight and twelve months of the defendant. The bills proved worthless, and the plaintiff sued the bail. Upon motion, the court ordered an *exoneretur*, on the ground that a

consideration had been given for the freedom from arrest. The case of *Rathbone* v. *Warren,* 10 *Johns. R.* 594, was an appeal from chancery, affirmed in this court. It was cited and relied on by counsel on both sides on the argument of this cause. On looking minutely into that case, there is no difficulty in seeing that it sustains the principle contended for by the plaintiff in error. A bill was filed to relieve bail, upon the ground that time had been given to the principal. There were two agreements set up between the plaintiff and the principal. The first was by *parol* and without consideration; the second was in *writing* and on a consideration of $100 paid. Spencer, J. says the decree cannot be maintained on the verbal agreement; that it was not valid at the time it was alleged to have been made; that it was executory and founded on no consideration.

From this brief view of authorities in relation to sureties and bail, it clearly appears that an agreement to give time to the principal is void without good consideration. The plea of the defendant, therefore, treating it as one setting up an agreement by the plaintiff to give time to the principal, is defective in not setting forth a consideration for the agreement. Such an agreement did not prevent the plaintiff from issuing a *ca. sa.* and arresting the principal, nor the bail from surrendering him at any time. It is also farther defective in not setting forth that the agreement was made without the privity and knowledge of the bail.

But it is said, that though the agreement stated in the plea be not a valid one at law, not binding on the parties, and did not prevent proceedings by the plaintiff or a surrender by the bail, and cannot therefore be sustained as an *agreement* giving time, &c. yet, it shews a case of fraud by the plaintiff, inasmuch as he, by giving license to the principal to go to Mobile and agreeing not to proceed against him or his bail, thereby *induced him to leave the state, and increased the risk and hazard of the bail, and that it is a breach of good faith and common honesty.*

The defence, then, resolves itself into, 1. A licence to leave the state; 2. Increased risk and hazard to the bail; and 3. Breach of good faith and common honesty.

Let us examine these matters of defence in their order. First, as to license : Mr. Justice Sutherland says : "It is like a licence to leave the limits, which, though given without any consideration, if carried into effect, not only exempts the sheriff and his bail from all liability for the escape, but discharges the debt itself." &c. To my mind, (I say it with much respect for the opinion of the learned judge,) there is an evident and marked distinction between the two cases. A license to leave the limits, is a license to the defendant to do that which it would be unlawful for him to do without such license ; a license to leave the state, is a license to the defendant to do what it was perfectly lawful for him to do without such license, and without even consulting the plaintiff on the subject. A license to leave the limits discharges the original judgment ; it is a satisfaction of the judgment. A license to the defendant to leave the state does not discharge or satisfy the judgment ; it is as valid after as before ; and the ground upon which the sheriff or bail to the limits defend in such cases, is that the *original* judgment is discharged. *Vigers* v. *Aldrich,* 4 *Burr.* 2482. *Tanner* v. *Hague,* 7 *D. & E.* 416. That cannot be pretended in this case. No consideration is necessary in such a license. By the arrest of the body of the defendant on a *ca. sa.,* the plaintiff has the highest satisfaction known to the law. A license or permission therefore to leave the limits, is a satisfaction of his debt and a discharge of his judgment.

Second, as to the increased risk and hazard to the bail : In *Melvill* v. *Glendining,* 7 *Taunt.* 126, 2 *Com. Law R.* 46, the plaintiff had taken bills for the judgment, payable at a future day, but was at liberty to proceed on his judgment, if he thought best. He delayed till the bills were dishonored. By this delay while the bills were running, the hazard and risk of the bail were increased ; but the court refused to discharge the bail, on the ground that the plaintiff had not precluded himself from proceeding at any time. In the case of *Brickwood* v. *Anniss,* the plaintiff had issued a *ca. sa.,* but afterwards agreed to suspend it for three weeks, to give the defendant an opportunity to compromise with his creditors. There the risk and hazard of the bail were increased, but the

court held that as the agreement was without consideration, and the plaintiff was therefore not prevented from proceeding, it did not discharge the bail. Increased risk and hazard to the bail cannot be a ground of defence, unless it be the immediate consequence resulting from some unlawful act of the plaintiff. The unlawful act by which the risk and hazard to the bail has been increased, so as to discharge the bail, should be of such a character as, if done by a third person, would make him liable to the bail for any damages he might sustain by it. Concealing the principal by a third person, to prevent the bail from surrendering, would make such third person liable for whatever the bail might thereby suffer. The same thing done by the plaintiff would discharge the bail. Assisting the principal to escape from the bail would render a third person liable, if the bail should afterwards, in consequence thereof, be fixed for the amount of the judgment. The same thing done by a plaintiff would discharge the bail. In the present case, as in those above cited, the agreement was without consideration and void, and both the plaintiff and bail were at liberty to proceed at any moment. If the risk and hazard to the bail, under such circumstances, is to be a ground of defence, then we may give up all idea of establishing any definite rule by which to test their liability or right to be discharged ; and the only enquiry will be, how great a degree of risk and hazard will constitute a valid defence. This bare suggestion serves to shew how difficult it is to limit such defences, when we once leave the established monuments and settled landmarks of the law,

Third, as to breach of good faith and common honesty : On this subject, Judge Sutherland says : "To proceed to charge the bail in this case is most emphatically a violation of the principles of good faith and common honesty, and is a breach of the very terms of the *agreement.*" What agreement? An agreement which is conceded on all hands to be void for want of consideration. The authority on which his honor relies for this position, is the language of Judge Spencer in *Rathbone* v. *Warren.* "The appellants," says he, "who are to be treated precisely as if they were obligees to a bond, have thought proper on receiving part of their debt

from the principal, to enter into a stipulation not to proceed against him until after a certain day. The stipulation undoubtedly induced the principal to leave the state, and the situation of the bail was thereby materially changed, and the risk greatly increased. It appears to me, that on principles of good faith and common honesty, this act must be deemed to have exonerated the bail." This language is inapplicable to the present case. It was used by Judge Spencer, in reference to a case where the stipulation or agreement was valid, being founded on good consideration; and the whole tenor of his opinion goes to shew the case to be one within the doctrine of giving time to the principal by an agreement founded on consideration; and the authorities cited by him, 2 *Vesey, jun.* 543, 2 *Brown's Ch. Cas.* 579, 582, are cases not of bail, but cases of giving time to the principal, whereby the surety are discharged. His honor adds: "The decree cannot be maintained on the verbal agreement; for the agreement was not valid at the time it is alleged to have been made. It was an executory agreement, founded on no consideration. To render such an agreement valid, both parties must be bound, or neither. When therefore *Jonas Warren* paid the $100 to one of the appellants, he paid it on the faith of the *written* agreement which he accepted. The decree must rest, therefore, for its support, entirely on the *written* agreement; and further, that he paid the appellants the $100 as an inducement to them to grant him this indulgence." As this case was much relied on by the counsel on the argument, I have been the more particular in examining it; and there is no doubt on my mind that the bail was exonerated, on account of time being given to the principal by a valid agreement, founded on good consideration. That the payment of part of the debt is a good legal consideration for the agreement of the plaintiff to give time, by which he is prevented from proceeding against the principal, is fully established in *Bulteel* v. *Jarrold*, 8 *Price's Rep.* 467, which will be more particularly noticed hereafter, in reference to another part of this case. There the plaintiff agreed with the defendant to take 50 tons of clay in part payment of his judgment, and to give him twelve months for the payment of the

residue. It was not pretended but that was a good consideration for the agreement; but the court held it was no defence at law.

This brings me to another point in this cause, which, in my judgment, is conclusive against the defendant : that even if the agreement was a valid one by reason of good consideration, and would therefore operate to discharge the bail, still, it cannot be set up, by way of plea, as a defence *at law.* A liability created by deed or judgment, can be discharged, at law only by matter of as high a nature. *Bac. Abr. tit. Release.* " A duty arising by record must be discharged by matter of as high a nature. So of a bond or other deed." *Unum quodque dissolvitur eo modo quo colligatur.* Payment was not a good plea at common law to an action on judgment, but was made so by statute, 4 *Anne, c.* 16, and by our statute, 1 *R. L.* 517, § 5. Neither is accord and satisfaction a good plea to an action *founded directly on the judgment.* It is not payment within the meaning of the statute. 1 *Chitty,* 481. 2 *Saund. Pl. & Ev.* 754. So also matters of defence in equity, or merely founded on the discretion of the court, cannot be pleaded. 1 *Saund. Pl. & Ev.* 191, *and cases there cited.* Whenever the principal has become bankrupt and obtained his certificate, the bail, if afterwards sued, have always availed themselves of the bankrupt's discharge by motion for an *exoneretur,* whether the discharge was before or after the bail had become fixed in law, by a return of the *ca. sa. non est inventus* against the principal. *Clark* v. *Hope,* 3 *Taunt.* 46. *Brickwood* v. *Anniss,* 5 *id.* 614. *Melvill* v. *Glendining,* 7 *id.* 126. *Harmer* v. *Hagger and Clark,* 1 *Barn. & Ald.* 332. 6 *Taunt.* 75. Such too has been the practice of our own courts. *Olcott* v. *Lilly,* 4 *Johns. R.* 409, *and cases there cited.* The bail has always been relieved on motion, where the principal has been discharged under the insolvent act; and I have searched in vain for a single case where the bail has availed himself of the discharge by way of plea. In *Donnelly* v. *Dunn,* 1 *Bos. & Pul.* 448, this question came before the court. The action was debt on recognizance of bail. Plea, bankruptcy of principal and certificate before the return of the *ca. sa.* against him. Demurrer to plea. Marshall, who was to have

argued in support of the plea, finding the opinion of the court against him upon the causes of special demurrer, moved for leave to amend, which was granted. Buller, J. expressed a doubt whether the defendant should not have sought relief by an application to the summary jurisdiction of the court, instead of pleading the bankruptcy and certificate of the principal. On the same page, in a note, is the case of *Beddome* v. *Holbrooke*. *Scire facias* on recognizance of bail. Plea, bankruptcy of principal before *ca. sa.* issued, and certificate allowed and confirmed before *ca. sa.* returned and filed. Demurrer and joinder. Buller, J. said : " The plea is bad on every account. The bankruptcy of the principal may afford ground for relief *on motion*, but I do not see how it can be made a legal defence." In the case of *Donnelly* v. *Dunn*, 2 *Bos. & Pul.* 45, the plea being amended in the particulars to which the special demurrer applied, the matter now came before the court on general demurrer. Buller, J. said : " It is of importance to the public and the profession to put an end to attempts to introduce upon the record questions of practice, which cannot be considered as legal defences, but which belong rather to what may be considered *the equity side of the court.* This action is brought for a legal demand arising upon a debt of *record;* and the defendant is called on to state a legal defence on record ; not merely to say he has equity in his favor. Lord Eldon, Ch. J. said : " We do not mean to preclude any application for *summary* relief on the part of the *bail,* but the opinion of the court is, that on this record judgment must be for the plaintiff." So in the case under consideration, the claim of the bail to relief, even if the agreement were a valid one, must be by bill in equity, or to the equitable powers of the court on motion, and cannot be set up as a legal defence by way of plea. When presented in the shape of a motion, the plaintiff has an opportunity of being heard by opposing affidavits, and the court thereby have the whole merits of the case before them, and are enabled to do justice to the parties ; but if presented by special plea, upon which the plaintiff is to take issue, the question is narrowed down and confined to a single point, by the strict rules of pleading ; and

the variety of attendant circumstances, which shew the real equities of the parties are entirely excluded ; and that too in a case which peculiarly belongs to the equitable jurisdiction of the court.   In *Scholey & Donville* v. *Mearns*, 7 *East*, 148, 153, Lawrence, J. animadverted upon the experiment made in that case, of pleading matter of defence at law, which, as was observed by Justice Buller in *Donnelly* v. *Dunn*, was nothing more than the equitable practice of the court in exercising a summary jurisdiction.   *Davy and others* v. *Pendergrass*, 5 *Barn. & Ald.* 187, 7 *Com. Law Rep.* 62, was an action on bond against a surety.   Plea, time given to principal by parol agreement, founded on good consideration.   Demurrer and joinder.   In this case, the doctrine of pleading parol agreements, though valid, to actions founded on sealed instruments or judicial records, is ably discussed ; and I can in no way so well convey my ideas on this subject, as to quote the language of the court as given by Ch. J. Abbot.   [Here Mr. T. read the opinion of the court, shewing that in all such cases relief must be sought upon special application founded on affidavits, and not *upon plea.*]   *Bulkcel* v. *Jarrold*, 8 *Price's Rep.* 467, was an action of debt on recognizance of bail.   No *ca. sa.* appears to have been issued. Plea, that the plaintiff, without the privity of the defendant, entered into an agreement with the principal, whereby the plaintiff was to receive fifty tons of clay, and give 12 months time for the payment of the balance in clay ; that fifty tons of clay were delivered, &c. and all without the knowledge or privity of the bail.   Demurrer and joinder.   A cause of demurrer assigned was as follows : "The cause of action in this suit arises upon matter of record.   The same cannot be discharged by any parol agreement whatever, and it does not appear in and by the said plea, that the agreement in said plea mentioned, was or is by matter of record or under seal." The court of exchequer gave judgment for the plaintiff.   Upon writ of error in the exchequer chamber, that judgment was affirmed.   Error was then brought to the house of lords, and that court affirmed the judgment of the court of exchequer and affirmance of the exchequer chamber.   The lord chancellor stated that the plaintiff must seek his remedy in

equity. Here, then, is a case upon an agreement between the plaintiff and principal, founded upon good consideration, to give time without the privity and consent of the bail—an agreement which disarmed the plaintiff and prevented his proceeding against the principal till the expiration of the stipulated time, and which, it has been already shewn, discharged the liability of the bail ; but the court held they could not avail themselves of it as a defence at law by way of plea ; they must obtain relief by motion, or seek their remedy in equity. Apply this doctrine to the present case. Had the plaintiff received a consideration for the agreement which he made with King, the principal, to permit him to go to Mobile, and not to proceed on the judgment against him till his return, the agreement would have been a valid one. The plaintiff would have been prevented thereby from proceeding against him, and the bail would have been entitled to be relieved from his liability, although not by way of plea. The breach of that agreement would have been a much greater violation of the principles of good faith and common honesty than the breach of the one which was made without any thing being received as an inducement to give time ; and still, such an agreement, it has been abundantly shewn, would not be available to the bail as a defence at law. How then can this agreement, void for want of consideration, be pleaded to the present action ? If a valid agreement cannot be set up by way of plea, how can a void one ? Is it better for being worse ? Is it good for being bad ?

From the preceding view of this case, the following conclusions are deducible : 1. That the claims of bail are not as strong as those of surety, and therefore ought not to be extended ; 2. That neither surety nor bail have ever been held to be discharged by giving time to the principal, unless the agreement was upon good consideration, so as to prevent the plaintiff from proceeding until the expiration of the extended credit ; 3. That when the liability of the bail is discharged, by giving time to the principal or by the operation of law, as by insolvent's discharge or bankrupt's certificate, he cannot *plead* such discharge or giving time, but must resort to a court of equity, as was done in the case of *Rathbone* v. *War-*

*ren,* or apply to the equitable powers of a court of law, on motion for an *exoneretur ;* 4. That if a valid agreement cannot be set up by way of *plea* as a defence at law, *a fortiori,* a *void* agreement, as in the present instance, cannot; neither can the party, by changing its name and calling it a breach of good faith and common honesty, change its character and nature so as to avail himself of it in such a shape ; for that must also rest on good consideration, and must be set up in equity, or on motion to the equitable jurisdiction of the court.

The amount involved in this controversy is of no great magnitude.   The principle involved in it, in my judgment, is an important one.   Courts of law are instituted to protect the rights of the community in which they are established. Those rights, however, must be such as the law can take cognizance of.   The law cannot notice every breach of good faith or moral honesty, nor can courts enforce the observance of contracts or agreements not founded on good and valid consideration ; although the contracting parties might be morally bound to perform them, courts look only to legal rights, and they have prescribed certain rules by which those rights may be asserted.   The greatest sanctity has always been attached to judicial records, and such is the reverence of the common law for them, that it will not permit them to be discharged but by matter of as high a nature. We have seen that in actions on recognizance records, precisely like the present, an agreement, valid to discharge the bail, cannot be *pleaded.*   How then can the agreement in this case, not valid, and which does not discharge the bail, be pleaded to an action founded on the record ?   If the bail is entitled to any relief, he has a more summary and less expensive mode to obtain it.   If this plea be sustained, our system of laws for the protection of legal rights will become, in that respect, a system of ethics for the enforcement of moral duties.

By Mr. Senator Todd.   To the declaration upon the recognizance, the defendant Niblo interposed three pleas.   The first and the third are only necessary to be considered, as

upon them the questions are raised for the decision of this court. The first plea was *nil debet*, to which the plaintiff demurred, and by the demurrer the question whether *nil debet* is a good plea to the action of debt on recognizance is raised. It seems to be settled by a long series of decisions, that when the record is the foundation of the action, and not inducement merely, *nil debet* is not a good plea. Such is the case here; the action is upon the record, and the party is precluded from denying an indebtedness which is established by the record; the principle is too well settled to admit of controversy. *Bullis* v. *Giddins, &c.* 8 *Johns. R.* 82. 1 *Saund.* 39, *n.* 2. 2 *Lord Raym.* 15. 2 *Strange,* 778. 8 *Mod.* 107. 5 *Burr.* 2586. 2 *Saund. on Pl. & Ev.* 754.

The important question, and the one principally discussed on the argument, arose upon the third plea. That plea alleged that the plaintiff gave and granted unto Edward King license and permission to depart and proceed from the city of New-York to Mobile, in the state of Alabama, and agreed with him that all proceedings upon the judgment against him should be stayed until his return from Mobile; and that in pursuance of that agreement, King did go to Mobile, and that he had not since returned. To this plea there was a general demurrer; and it is contended that the plea is bad because there is no consideration alleged for the agreement between Clark and King.

It is a maxim of the common law that every agreement must have a consideration to support it, and that without such support it is a *nudum pactum*, not changing or affecting the rights of the parties. To a certain extent there is a similarity between the situation of bail and that of surety in a bond or upon a note; so far as these cases are analogous, the principles which are settled as to the one ought to apply to the other. Surety and bail are both voluntary, and if upon their respective engagements they are made liable, they pay that for which they have received nothing; so far their condition is similar. They are dissimilar in various respects; bail can at any time discharge himself from liability by a surrender of his principal; a surety has no such power. Bail can be relieved when the principal has become insolvent, and

been discharged ; or in case of death or imprisonment for life, or for years, in an adjoining state. Surety runs the risk of insolvency, death, or the absconding of the principal, and has no power by surrender to relieve himself from liability. Even after bail are legally liable, a certain degree of grace and favor has been so long accorded to them that it is now considered a matter of right, and they may discharge themselves after a suit commenced against them. The situation of surety is worse than the situation of bail ; the latter having within his power means of relief which cannot be exercised by the former.

Supposing this to have been a case in which Niblo had joined in a bond as surety with King, or endorsed a note for him, would the matter set up in this plea have afforded a defence to an action upon such bond or upon such endorsement ? In 3 *Kent's Comm.* 77, it is said, giving time by the holder to the acceptor of a bill, after the drawer has been fixed, will discharge the other parties to the bill ; but the agreement for delay must be one having a sufficient consideration. The case of *McLemore* v. *Powell, &c.* 12 *Wheaton,* 557, is one much to the point in this case. Application was made to the principal for money due on a bill, and a suit was threatened, if an immediate arrangement was not made to pay it. It was then proposed to the plaintiff that if he would give an indulgence of four or five weeks, the bill should be paid ; to this the plaintiff agreed ; the indulgence was granted, and the question was whether this discharged the endorser. It was held that a mere agreement with the drawer of the bill for delay, without any consideration for it, and without any communication with, or assent of the endorser, did not discharge him. The court remarked, that in order to effect such a discharge, the agreement must be one binding in law upon the parties, and have a sufficient consideration to support it. An agreement without consideration is utterly void, and does not, for a moment, suspend the rights of any of the parties. *Chitty on Bills,* 379. 2 *Bos. & Pul.* 652. In *Fulton* v. *Matthews,* 15 *Johns. R.* 433, the holder of a note promised the principal to wait until the next spring for payment. The holder had also commenced a suit against the principal,

and afterwards discontinued it; the proceedings were without the privity of the security. The principal finally became insolvent, and was discharged. It was held that the plaintiff had done no act to preclude himself from suing the principal *at any time.*

In *Orms* v. *Young, Holt's N. P.* 84, Gibbs, Ch. J. says, that where the forbearance and giving time is an engagement upon such consideration as ties the hands of the creditor, in such a case the surety is discharged. In *Paine* v. *Packard,* 13 *Johns. R.* 174, it is decided that delay alone in calling on the principal will not discharge the surety. The case turned upon the fact that Packard had requested Paine to sue the principal, and that he had neglected to do so. On this ground Packard was held to be discharged. See also 5 *Barn. & Ald.* 187. From these cases I think the principle well settled, that no contract between the creditor and principal debtor will discharge the surety, unless that contract is upon good consideration, and one that suspends the right of the creditor to take further proceedings against the principal. Such a contract is not stated in this plea; it would therefore be bad, if pleaded by Niblo as surety or as endorser for Clark.

I will now proceed to enquire if Niblo is in any better situation, being special bail for Clark, than he would have been if he had been strictly surety: The question is not now raised for the first time; it has often been the subject of judicial examination. The case of *Rathbone* v. *Warren,* 10 *Johns. R.* 587, decided in this court, seems to me to be decisive in favor of the plaintiff. In that case two agreements were stated and relied upon, to discharge the bail—one without consideration, the other upon a consideration of $100 paid by the principal for the privilege of going out of the state, and the suspension of proceedings for a specified time. This agreement upon consideration was held to discharge the bail, whilst it was also said that the agreement without consideration was utterly void—binding upon none of the parties.

The judge, in delivering the opinion in the court below, says, that the case of *Rathbone* v. *Warren* is distinguishable from this only in the circumstance, that there the princi-

pal paid a part of the debt in consideration of the license to depart, and the agreement of the plaintiff not to proceed and charge the bail. That circumstance is the very point upon which that cause turned; it is that upon which this is placed. If there had been a valid contract made upon good consideration, Niblo would have been discharged; that circumstance makes the contract valid, which, without it, would be void. It alone gives it vitality and force. The judge finally puts the case upon the ground that this stipulation induced King to leave the state. That may be so, but it affords no ground of defence to this action in a court of law, and it is not for us now to enquire what might be the rights of the parties in a court of equity.

In the following cases the question involved here seems to have been discussed and decided at law. In *Brickwood v. Anniss*, 5 *Taunton*, 614, application was made to the court to set aside the judgment obtained against the bail, upon the ground that the plaintiff, after judgment obtained, and a *ca. sa.* issued against the principal, told him that he would accept a compromise, if his other creditors would come into it, and would give three weeks to consult with them, and promised not to arrest him in that time. The defendant mentioned it to his bail, and told him that the action was settled. Gibbs, Ch. J. says, the plaintiff, by remitting his legal diligence, does not bar the bail from surrendering the principal at any moment. The plaintiff has never put himself in such a situation that he might not at all times proceed with his action. To apply the language and principles of the case of *Brickwood* v. *Anniss* to the one now under consideration, it would be saying that Clark, by remitting his legal diligence, did not bar Niblo from surrendering King at any moment. Clark has never put himself in such a situation that he might not at all times proceed in his action against King. In *Willison v. Whitaker*, 7 *Taunton*, 53, the court recognize the principles of *Brickwood* v. *Anniss*, and say, that there was no consideration for the delay, but in the case of *Willison* v. *Whitaker* there was a consideration; the party had purchased his freedom from arrest for a certain time; the plaintiff had tied up his own hands; he had placed himself

in such a situation that he could not at all times proceed in his action. In *Melville* v. *Glendining*, 7 *Taunton*, 126, the same principle is established, and the court say the plaintiff never precluded himself at any moment from proceeding against the defendant. The bail were never at any time prevented from surrendering the defendant, and are not, therefore, discharged from their liability.' These cases differ in one respect from the one now under consideration : that difference is in the manner in which the question is raised. The cases above cited all arose on *motion* to the court, founded on affidavits for relief of the bail. Courts of law will exercise, to a certain extent, equitable powers over the matters pending therein, when the matter arises on motion ; and relief is often granted in such cases, when it could not be obtained by plea.

If the matter set up in this plea could not be available to the party on motion, can he, by pleading the same matter, make a defence at law? Application for the discharge of bail is made to the discretion of the court ; and is so made because it is not a legal defence. If it amounted to such a defence there would be no use or occasion to apply to the court for that relief which could be obtained by plea. That matters resting in the discretion of the court cannot be used by way of plea, is, I apprehend, well settled. *Saunders on Pleading and Evidence*, 191, and the cases there cited, put this question at rest.

In *Donnelly* v. *Dunn*, 1 *Bos. & Pul.* 448, and 2 *id.* 45, it was held that in an action of debt on recognizance of bail, a plea of the bankruptcy and discharge of the principal is bad on general demurrer, and Buller, J. says, the action is brought for a legal demand, arising upon a debt of record ; the defendant is called upon to state a legal defence upon the record, and it is not sufficient to say that he has equity. Wherever the principal becomes insolvent, and is discharged, the court will, on motion, exercise their equitable powers, and exonerate the bail, because it would be no defence at law, and bail are favored by courts. The matters pleaded in this case are no answer to the declaration, because they do not make a legal contract, founded upon a

Clark
v.
Niblo.

good consideration, binding upon the parties, and one that suspends the right to proceed in the original action.

The case of *Bulteel* v. *Jarrold*, 8 *Price*, 467, appears to be so exactly like the present, that if we recognize the principle there established, it must put an end to the question raised in this case. That was like this, an action of debt on recognizance of bail. The plea there interposed was that time had been given to the principal ; such is the plea in this case. There was a demurrer to the plea in that case ; there is also one in this. Judgment was given for the plaintiff, on the ground that the relief sought could only be obtained by an application to the equitable powers of the court.

It was made a question on the argument, whether the record could be avoided at law, unless by an instrument of equal authority. If the plea in this case had stated a consideration, so as to have made it a legal contract binding upon the parties, then this question must necessarily have been decided ; but as the plea is bad, for the reasons stated, it is not necessary now to determine it.

I am of the opinion that the judgment of the supreme court ought to be reversed.

On the question being put, *Shall the judgment of the supreme court be reversed ?* the members voted as follows :

For *affirmance*—The Chancellor, and Senators Allen, Boughton, Conklin, Deitz, Gere, Mather, Rexford, Warren, Wheeler and Woodward—11.

For *reversal*—Senators Armstrong, Beardsley, Benton, McLean, Oliver, Sherman, Tallmadge and Todd —8.

Whereupon the judgment of the supreme court was affirmed.