DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

AT JUNE TERM, 1861.

---

## STEPHEN F. PAULIN vs. CHARLES KAIGHN.

1. Co-sureties are entitled to contribution from each other towards the moneys paid in discharge of their joint liability, and also to the benefit of all the securities which any of them may have taken to indemnify himself.

2. A surety may take securities from his principal to indemnify himself, and if he brings an action against his co-surety for contribution, the fact of his holding such securities will not bar a recovery; but after such recovery the defendant is entitled to enforce his right of subrogation, and so obtain the benefit of the securities.

3. If, before action brought for contribution, the securities held for indemnity are converted into money, it is a payment *pro tanto* in liquidation of the amount paid on the liability, and in an action against the co-surety it is competent for him to show that money has been so realized. It is a payment of so much by the original debtor, and is so far an extinguishment of the joint liability.

4. In an action of *assumpsit*, brought by one co-surety against another for contribution, the defendant may show that the plaintiff held securities for the benefit of all the sureties, and that those securities had been surrendered to the principal debtor by the surety holding them, without the consent of his co-sureties, and if such surrender is proved, it releases the co-surety from contribution to the amount of the securities surrendered.

480

5. It makes no difference whether the securities were surrendered by the surety before or after he paid the debt.

6. The presumption is that the securities surrendered are of the value expressed upon their face, and the burthen of showing that they were of less value rests upon the party surrendering them.

In error to the Supreme Court.

*T. P. Carpenter* and *W. L. Dayton*, for plaintiff in error.

*P. L. Voorhees* and *A. Browning*, for defendant.

HAINES, J. This was an action of *assumpsit*, brought by Kaighn against Paulin.

The plaintiff below, at the trial, proved that he and the defendant below, together with one Cooper, executed to William Champion a joint bond for the payment of money due to Champion from the South Camden Ferry Company, whose joint sureties they thereby became. It further appeared that Champion had recovered judgment against all the sureties, and that Kaighn and Cooper satisfied the judgment, each paying one-half of its amount.

This action is to compel Paulin to contribute to Kaighn the one-third of the one-half which he was compelled to pay, and the proof so made established a *prima facie* right to recover.

The errors assigned are upon the rejection of the evidence offered on the defence, and the question is, whether the proof so offered constituted, in whole or in part, a legal defence to the action.

The offer was to prove—1st, that Kaighn was president and a director of the South Camden Ferry Company during the time of these transactions, and that Cooper was also a director during the same time ; that the ferry company, being the principal debtor, executed and delivered to Kaighn and Cooper certain securities to indemnify them and Paulin against this and other liabilities incurred and to be incurred by them in behalf of the

company, and that those securities were surrendered and given up to the company by Kaighn and Cooper without the consent of Paulin.

It is not questioned but that co-sureties are entitled not only to contribution from each other towards the moneys paid in discharge of their joint liability, but also to the benefits of all the securities which any of them may have taken to indemnify himself. Nor is it disputed that where one surety holds securities for his indemnity, the mere fact of his holding such securities will not bar a recovery in an action for contribution. After such recovery and payment of the judgment, the defendant may, in a proper tribunal, enforce his right of subrogation to, and so obtain the benefit of them. If, however, the surety before the action for contribution shall have converted the securities for indemnity into money, that will go *pro tanto* in liquidation of the amount paid on the liability; and it is competent for the co-surety, in the action against him, to show that money has been so realized. It is a payment of so much by the original debtor, and so far an extinguishment of the liability. All the sureties have an equal interest in the indemnity and in the money realized from it. The surety who held it has no right to appropriate to his own use the whole money so realized, nor has he a right to deprive his co-sureties, without their consent, of the benefits to be derived from it. He becomes their trustee, and as such must faithfully hold the securities for the benefit of all his co-sureties, and he has no right, without their consent, to transfer, surrender, or cancel them.

The offer was to show that these securities were intrusted to Kaighn and Cooper for the benefit of themselves and of Paulin, and that they surrendered them to the company of which they were officers without the consent of Paulin. It was held by the court below that the testimony was lawfully overruled, on the ground that it constitutes no defence at law, and that the defendant must

submit to a recovery against him, and then seek his redress in a court of equity.

This would undoubtedly have been true if the securities had been held, and not collected or surrendered. The surrender, without the consent of Paulin, was a fraud upon him; it unjustly deprived him of the means of indemnity, on which he had a right to rely. And whether it was an actual and intentional or a constructive fraud, it was equally injurious to him; and I can see no reason why it may not be shown in a court of law. Whether it was fraud in fact or in law, was not opened in the offer. The facts were opened and offered; the result of them was a question of law, depending on the circumstances to be proved, the *quo animo* with which the surrender was made.

Fraud, whether of fact or of law, is within the jurisdiction of a court of law, and, in many cases, may be considered there.

It is clear, and admitted, that such surrender may be shown in equity. Why not at law? The action selected by the plaintiff is of itself equitable, and any defence is competent which tends to show that the plaintiff, in justice and equity, ought not to recover.

In *Moses* v. *Macferlan*, 2 *Burr. Rep.* 1003, Lord Mansfield, speaking of the action of *assumpsit* as beneficial to the plaintiff, because he may declare generally, and make out his case at the trial, remarks that "it is equally beneficial to the defendant. It is the most favorable way in which he can be sued. He can be liable no further than for the money he has received, and against that he may go into every equitable defence upon the general issue. He may claim every equitable allowance. He may prove a release without pleading it. In short, he may defend himself by everything which shows that the plaintiff, *ex equo et bono*, is not entitled to the whole of his demand, or any part of it." This was said in an action of *assumpsit* for money had and received, but the remark applies to *assumpsit* for money paid as well. It applies to matters

which tend to show that the defendant was never liable, and also to such as discharged his liability.

The defendant did not seek to be subrogated to the benefits of the securities—they were gone and extinguished. But he offered to show that the co-sureties had absolved him from liability upon the implied contract by fraudulently depriving him of the benefits of the securities which they had held for him and for his and their indemnity.

The offer was to show acts equivalent to a release, and which operated to discharge a pre-existent liability.

If they would avail as a defence in equity, why should it be excluded in a court of law?

The proof required to obtain relief in equity in such case is also admissible at law. The value of the securities can be proved as well in one court as in the other, and the value found applied in defence, *pro tanto*, to the discharge of the claim, in whole or in part. The circumstances under which the surrender was made may be shown to exculpate the defendant from the charge of fraud, and that he has kept his part of the contract in good faith. If the defendant suffer the judgment to be established, and pay the amount of it, and then bring his action for the damage arising from the unlawful surrender, the same proof must be exhibited, and that in a court of law.

It is true that in this action the defendant cannot plead the surrender as a payment nor as a matter of set-off, as no money is averred to have been paid by the plaintiff. That is not the character of the defence.

The defendant insists that, although he may have been liable, yet that he was subsequently discharged.

The implied contract between the co-sureties was, that each would bear an equal part of the liability, and each have an equal benefit in all the securities for indemnity that either of them then held or should afterwards acquire. The surrender of the securities without consent

Paulin v. Kaighn.

was a breach of that contract, and the co-surety who is prejudiced by it ought to have had the opportunity of proving such breach in answer to the charge of a breach on his part.

Many English cases and some American authorities may be found to exclude such defence from a court of law; but later cases look the other way, and the more recent American authorities sustain the defence.

In *Rees* v. *Berrington*, 2 *Vesey, Jr.*, 542, it was held that whether a surety had been discharged or not is a legal principle, and that if the form of the security and mode of proceeding at law would authorize an inquiry into the fact, whether security or not, the defence would be the same at law as in equity. It is the form of the security that forces these cases into equity.

In the case of *The People* v. *Jansen et al.*, 7 *Johns. R.* 337, which was an action on an official bond of a loan officer, the defence was constructive fraud in the board of examiners of the loan officer's accounts by neglect to note deficiencies in previous years. Thompson, J., who declared the opinion of the court, said, " Under these circumstances, the first question that arises is, whether the defendants can, in a court of law, avail themselves of these facts in defence." And he adds, " I am unable to discover any good reason for sending the defendants into a court of chancery for relief. There is nothing in the nature of the defence to make it peculiarly the subject of equity jurisdiction. That the ancestor was a surety only, appears upon the face of the bond, and whatever would exonerate in one court, ought also in the other. The facts being ascertained, the rules of law must be the same in this court as in a court of chancery.

The matter in defence in that case has since been overruled by the Supreme Court of the United States; but the rule of evidence and the mode of presenting it have never been questioned. *Clark* v. *Niblo*, 6 *Wend.* 236.

But, on the contrary, it was cited and approved by Chancellor Kent, in *King* v. *Baldwin*, 2 *Johns. C. R.* 559.

Shaw, Chief Justice, in *Carpenter* v. *King*, 9 *Metc.* 511, held that in general that which affords a surety a remedy in equity against his creditor is a good defence at law where the suit is against the surety alone. If such is the rule between the surety and creditor, it will apply with more force to a case between co-sureties.

In *Wayne* v. *Kirby*, 2 *South Car. R.* 552, O'Neil, J., recognized the principle, and declared that upon the fact of the suretyship being established, whatever would discharge a surety in equity would also discharge him in a court of law.

In the well-considered case of *La Farge* v. *Herter*, 11 *Barb. S. C. R.* 164, Allen, J., held that in the prosecution of sureties law has followed equity, rather than equity the law. Courts at law have from time to time authorized and sustained defences which have been held in equity to entitle the surety to relief, in order to avoid the necessity of invoking the aid of the latter court. He adds, " the right of subrogation, although originating in courts of equity, is now fully recognized as a legal right, and any act of the creditor which interferes with that right, and is a fraud upon it, operates to discharge the surety as well at law as in equity. In such case the surety should be permitted to avail himself at law of any defence which by the established rules of law would entitle him to an unconditional discharge in a court of equity. When nothing is addressed to the discretion of the court, the rules by which the two courts are governed in adjudicating upon the rights of parties are the same." In the case before us the suretyship is established. It is the very basis of the plaintiff's claim, and he was bound to prove it to maintain his action. And being so established, there is no reason why the defendant may not avail himself of the proposed defence. If the securities for his indemnity were surrendered without his consent, it was a violation

Paulin v. Kaighn.

of his rights.  It was, at least a fraud in law against him, and would afford a discharge in equity to the extent of their value, and upon the principles declared in the cases referred to, affords a defence at law.  It was, moreover, such a vitiation of the implied contract on the part of the plaintiff as ought to bar his recovery to the extent of the value relinquished.  If by that contract the plaintiff was bound to give to the defendant the benefit of the securities of indemnity, the parting with them without his consent was a breach of the contract, and should bar a recovery, at least *pro tanto*.

Nor can I conceive how the case is changed by the fact that the surrender was made after Kaighn had paid the debt—after the liability of Paulin to be sued by him arose.

His rights to the benefit of the indemnity remained.  If after his liability was fixed Kaighn had received money on the securities, it would have been applied to the debt paid by him, and it would have been lawful for the defendant to show it as a payment under a general issue.  A payment on the claim, by whomsoever made, reduces the claim *pro tanto*, if it were for a part only, and extinguishes it, if equal to the whole.

So if it were competent to show the securities surrendered before the liability of Paulin was fixed, it must be competent to show it afterwards.  The rights of Paulin are the same; the obligations of Kaighn are not altered.

2. It was further objected that the testimony offered was incompetent because it was not accompanied by an offer to show that the securities were of some value.

The securities are presumed to be of the value expressed on their face, and for which they were taken.  The holders, who surrendered them, assume the burthen of showing that they were of less value; and in his reply the plaintiff would have been at liberty to show that they were of less value than the face, or of no value at all, and have limited the discharge to the amount of such value.

He would also have been at liberty to show that they were surrendered for some sufficient reason. . If they were also to indemnify against other debts or liabilities that could also have been shown between these parties without making other persons parties, and the true proportionate value applied to this claim.

The whole question would have been opened to the parties as fully as if they had been in a court of equity.

The further offer of the defendant, Paulin, to show an agreement to receive the bond and mortgage of the ferry company in lieu of the debts due from the company for moneys paid or to be paid, and to fund the debts, was clearly incompetent, for the reasons expressed by the justice who declared the opinion of the Supreme Court. The reasoning and the language of that part of the opinion I cannot improve, but fully adopt.

I think the judgment of the Supreme Court should be reversed, and the record remitted, that the case may be proceeded in according to law.

VAN DYKE, J. The plaintiff and defendant and one Joseph M. Cooper had become jointly indebted to William Champion on a bond for $4555, dated December 9th, 1852. This bond, not being paid when it became due, was prosecuted on, and was afterwards paid off by Kaighn and Cooper, each paying the one-half thereof. Afterwards this action was brought by Kaighn against Paulin, the defendant to compel him to contribute his equal proportion of the one-half which Kaighn had so paid to Champion, being the one-sixth of the bond before mentioned.

On the trial below, the plaintiff, Kaighn, proved the due execution of the bond by all the parties to it, the suit brought and judgment recovered on it, and also that he had, in a way satisfactory to the holder, paid off the one half of it. These facts, alone, would have entitled the plaintiff to a verdict for the amount due as claimed. But the defendant, Paulin, undertook to resist this claim of

the plaintiff against him, and offered, by way of defence, to prove before the jury a certain set of facts, which he insisted were sufficient in law to protect him against such a verdict as was claimed. All the evidence which he thus offered was overruled and withheld from the jury, and they rendered their verdict for the full amount claimed; and whether the withholding from the jury the whole of the evidence thus offered was, under the circumstances, right or wrong, is the question for our consideration.

We are bound, in this inquiry, to consider every single fact offered to be proved as absolutely true; for the defendant offered to prove them true, but was not permitted to attempt it, consequently we are compelled to suppose that he could have proved, if permitted, what he offered to prove; and the overruling of the evidence went on the ground that, even admitting everything offered to be true, they could not operate as a defence to the suit; and herein, if anywhere, was the error committed.

As the defendant offered no other evidence besides that now under consideration, we are bound, I think, to suppose that this was all he had to offer; and the question that we have to decide upon is, whether the jury, if they had had all this evidence before them, might lawfully have found a different verdict. If, with this evidence before them, they could not properly have found any other verdict, then the court below was right in excluding it; but if they might, in the exercise of their proper powers and functions, have lawfully found a different verdict, then it was wrong to withhold the evidence from them. It is not necessary that the evidence should have been so strong as to require them to find a verdict for the defendant; but if there is so much in it as that, not being overcome by the plaintiff, the jury might lawfully either have found for the defendant, or have found a less verdict for the plaintiff, then the court unquestionably erred in refusing to let it go before them; for any party in a suit has

an undoubted right to have the jury pass upon his evidence, if it possess so much legality and force as that it may properly influence them in his favor.   The question is not whether the jury might not have treated the evidence, if admitted, as too weak to sustain the facts or propositions sought to be proved by it.   This they might have done; but if they *might* lawfully have thought otherwise, and, so thinking, might lawfully have rendered a verdict more favorable to him, then to deny him the right of laying his evidence before them, was clearly an error.

What, then, were the facts or propositions which the defendant offered to prove? and could they, if proved, lawfully have made the verdict different?

I understand the offer to be to prove, in the first place, that neither of the parties who signed the bond were principals, but that the amount secured thereby was the debt of the South Camden Ferry Company, and that the parties who signed the bond were simply co-sureties for that company.   I understand them further to offer to prove that this same ferry company put into the hands of two of the obligors, Kaighn and Cooper, securities to protect and indemnify them all against this liability, and that the securities were placed there for that purpose; but that, instead of using them for that purpose, the plaintiff and Cooper, without the consent of this defendant, surrendered them up again to the company, thereby depriving the defendant of all advantage therefrom.

I understand, also, the further offer to be to prove that the two obligors, Kaighn and Cooper, who first received, and then surrendered these securities to the company, were themselves the principal officers and active members of this same company, so that the surrender which they made was, in fact, a surrender to themselves in part and for their own benefit.

These, without going into the minutiæ of the offer, are the distinct propositions which the defendant offered to prove; and, although some of their features were dubiously

foreshadowed in the evidence of Cooper, still, if they were important and material in themselves, the defendant had the right to prove them unequivocally, if he could by his own evidence, even though such evidence came in direct conflict with that of Cooper.

Supposing, then, for the present, that the securities referred to were sufficient for the indemnity mentioned, were the facts and propositions offered to be proved important and material as matters of defence, and might the jury properly have taken them into consideration in making up their verdict? If they were important and material, and such as the jury might have properly taken into consideration in making up their verdict, then it was a clear wrong to the defendant to withhold them.

I am unable to see why they were not proper matters to go to the jury. If it be true that these three obligors were simply sureties for the ferry company, who were the principal debtors, and if it be true that two of their number held ample securities of that company for the indemnity of the whole three, and if it be true that the two, without the consent of the third, surrendered them up to the company, by means of which such third person is wholly deprived of all benefit therefrom, and if it be true that the parties so surrendering are themselves a part of that very company, and that such surrender was for their own benefit, and not at all for the benefit of the defendant, then, by every principle of justice, propriety, and common sense, as well as by numerous well considered and carefully adjudged authorities, they should not be permitted to compel this defendant to contribute to the payment of the bond.

It is true that the plaintiff might, by evidence, have combatted, rebutted, and perhaps overthrown all these facts and propositions; but he did not do so, nor did he offer so to do. We must, therefore, I repeat, on this inquiry treat them as absolutely true.

But it is said that the defendant did not offer to prove

any "actual fraud." It is true, the offer does not make use of those words, but if it contained a statement of facts from which the jury might lawfully infer actual fraud, the offer is just as important and material as if it contained those words; and who can say that the jury, with all these facts before them unexplained and uncontradicted, and so .we are now to consider them, and especially those which go to show that the plaintiff and Cooper surrendered these securities to themselves indirectly and for their own benefit, might not properly enough have inferred actual fraud in the transaction? I think they might have done so. But I do not think it was necessary for the defendant to either allege or prove what might be considered *actual* fraud. It is sufficient for him to prove such a set of facts as would be considered a fraud in law, or such a set of facts as by law estopped or precluded the plaintiff from enforcing contribution from him. I do not understand the authorities which declare that where one of two joint sureties holds securities for their indemnity and protection, but without consent surrenders them up, cannot compel contribution from his co-surety, to proceed on the ground of actual or willful fraud alone, but also on the ground that he has voluntarily and improperly thrown away the securities which he held for the indemnity of himself and co-surety; and whether it was the result of dishonesty or folly, he has thus deprived his co-surety of all protection and security, and if he has the whole to pay it is his own fault, he has thereby discharged his colleague from all obligation to contribute, and this undoubtedly is as it should be.

It is further insisted that the offer of the defendant contains no statement or allegation that the securities referred to possess any value. I do not think that such is the fair interpretation of the language of the offer. The general offer was to prove that the two co-sureties, Kaighn and Cooper, had received from the principal debtor "*securities* to indemnify them against this liabil-

ity." Now, the word *securities* does not at all mean worthless things, but it means valuable things, things that will secure. Their value, it is true, may be disputed by the opposite party, and perhaps overthrown by his evidence; but while their value is unshaken and undisturbed by counter testimony, we must apply to the word securities its usual signification; but the meaning of the word is abundantly explained by the additional language, which goes on to state that they were not only securities, but securities to *indemnify* them against this very liability. Now, to indemnify means to fully protect and save harmless; and when the defendant offered to show that the co-securities had received securities to indemnify them against this liability, it must be understood that they were securities that were sufficient to protect and save them harmless against all liability on that bond. The offer, then, in this general form, contains a sufficient allegation that the securities held were sufficient for their indemnity without going into particulars; but the defendant specifies and shows that the securities were bonds secured by mortgages, for at least forty thousand dollars, to secure these and other persons from all liabilities on their part incurred for the company. It may be fairly inferred that there were other liabilities besides this bond; but it in no way appears how much such liabilities were, nor is there anything from which we can justly conclude that these securities were not ample to cover the liability on this bond.

The natural and usual idea connected with bonds and mortgages is, that they possess value, the same as any other securities that might be named; and in the absence of all evidence, or even allegation to the contrary, the first presumption is, that they are worth what they purport to be worth, and when offered in evidence as *valuable* securities, accompanied by the allegation that they were taken and held as such for the purpose of securing and

indemnifying these sureties against their liability on this bond, we cannot hold them as *prima facie* worthless; and when we find that they were furnished by this debtor company through the plaintiff himself, who was in part its owner and principal officer, and who must be presumed to have had knowledge of their value; and when we find, as the offer shows, that he, under such circumstances, received them in behalf of himself and his co-sureties for the purpose of securing and indemnifying them against this liability, he, at least, is precluded from insisting that the presumption is that they are worthless until the contrary is shown. He took and held them for the joint benefit of the three. He has voluntarily sacrificed them without the consent of the defendant, and has thereby deprived him of all benefit from them, whether they are good or bad. The presumption is against him; and if it be true that he has only parted with those things which were of no value, and which could not possibly be of any value to the defendant, it is for him to show it.

It is true that the plaintiff might by evidence, if he possessed it, have repelled and rebutted all this presumption of value, and might have shown that all the securities referred to never had at any time, either when given or when taken, or when surrendered, or at any other time, any value whatever, but were entirely worthless, and that they had been taken originally on a wholly mistaken view of their value. If he had done this, he might have entirely overcome the defence thus set up; but this he did not do, nor does it appear that he alleged or pretended any such thing at the trial when the offer was made. Without considering it necessary, then, to determine at this time precisely what kind of a verdict the jury should have rendered if this evidence had all been before them, it seems to me to be a matter very appropriate for their investigation, and a matter which might, and I think ought to have led them, in the exercise of their proper legal powers, to have found a *different* verdict.

If this be so, then the court below erred in overruling the whole of this evidence.

But it is further insisted that a court of law is not a tribunal in which such a defence can be raised; that a court of equity is the proper and only place for the hearing of such a defence  This was held so once, for the very good reason that a court of equity was the only tribunal in which such a prosecution could be commenced and maintained.  When, in former times, all parties were required to go into that court to compel a contribution against a co-debtor or a co-surety, the defendant was permitted, of course, to raise such a defence as the case admitted of; but when, in process of time, the courts of common law took jurisdiction of such kind of suits, it cannot be supposed that they did so for the benefit of plaintiffs only, and for the purpose of injuring defendants. I cannot suppose that the object was to permit a plaintiff to leave a tribunal to which he had been previously confined, and where both parties had a full opportunity of being heard, and permit him to come into another, where he might be allowed to prove his own side of the case, but where his adversary would have no opportunity to defend himself.  But I suppose that when the courts of law determined to take jurisdiction of this kind of case they determined to take jurisdiction of the whole case, the defence as well as the prosecution, wherever the evidence was such as that it could be introduced in accordance with the principles and practice of the law courts. When the plaintiff was permitted to change his tribunal, he was permitted also to change his form of prosecution as well as his mode of proof, and the defendant in such cases was allowed the same thing.  If the plaintiff could only prove his case in the mode adopted by the Court of Chancery, he would still be forced to resort to that tribunal, and so it was with the defendant.  If his evidence was of such a nature that he could only avail himself of it in the mode adopted in the Court of Chancery, and in ac-

cordance with its practice, he would still be driven to that court for redress in a mode well known to the profession; but when the evidence on both sides was of a kind that it could all be introduced before a court and jury consistently with the law and practice of those courts, the whole controversy was heard and determined there the same as in any other action.

One of the chief difficulties in the courts of law, and which frequently drove the parties, sometimes the complainant and sometimes the defendant, into the Court of Chancery, was the fact that by the law, as it then stood, neither party could avail himself of either his own or his adversary's evidence in the case, and when the facts in the cause necessary to sustain either side were only known to the parties themselves, resort had to be had to the Court of Chancery; and it was this state of things which gave to that court much of its jurisdiction, as well as its business; but the law of this state, which makes the parties to a suit competent witnesses, removes much of the difficulty, and in the case before us there seems to be no difficulty, so far as appears, in presenting the whole case to the court and jury in the usual mode adopted in courts of law, no matter who the witnesses may be or what the evidence that may be offered; and I can see no reason whatever why the defendant in this case, who has been brought into a court of law by the plaintiff, should be compelled to make himself complainant, and commence another suit in another court, to the end that he may avail himself of a defence which has been denied him in the court into which his adversary saw fit to bring him, and that, too, on a principle which has no substance in it whatever, and has long since been swept away by the repeated decisions of the courts of law themselves, in which such actions have been brought and sustained.

The courts of law and legal authorities, in speaking of this particular kind of suit for contribution, have always

spoken of it as an *equitable* suit, and have accordingly always permitted the whole merits of the case on both sides to be fully investigated and passed upon ; but if it were not so, the action of trespass on the case in *assumpsit* is of itself an equitable action, and has always been so treated and spoken of by the courts ; and the defendant, under the plea of the general issue, is always allowed to offer in evidence anything which goes to show that the plaintiff is not entitled to recover, a few special defences excepted perhaps, unless they are pleaded specially ; and I am unable to see any good reason, based either on principle or authority, why this case should not be so treated.

BROWN, J. (dissenting.) This action is founded upon an implied contract. Kaighn, Paulin, and one Cooper, in 1852, executed to William Champion a bond for a sum of money due to him from the South Camden Ferry Company, as sureties for that company. The contract implied at the time of the execution of the bond was that each of the obligors would pay one-third of the debt if the company failed to pay it. The company did not pay, and Kaighn and Cooper did, in August, 1855, each pay one-half. Kaighn was then entitled to receive of Paulin one-sixth of the debt, being the amount he had paid for Paulin. This cause of action was proved on the trial below, and a verdict properly rendered for Kaighn, unless the defence offered and overruled was a legal answer to the whole or part of the demand.

The offer was to prove—1st, that the ferry company, in December, 1854, gave to Kaighn, Paulin, and Cooper, and others not named, a mortgage on most of their property to secure them for moneys advanced or to be advanced, *pro ratâ*, to the amount of $30,000, and that Kaighn and Cooper canceled and discharged the mortgage after the payment to Champion, without the consent of Paulin.

2d. That said company, in March, 1855, gave a mort-

gage to one Stephen Coulter on most of their property, to secure coupon bonds to the amount of $55,000, to be issued to such persons as had or should advance any moneys for its benefit; that Kaighn received twenty bonds of $500 each as security for his advances made or to be made for the company, and that the said bonds were surrendered and mortgage canceled without the consent of Paulin. It was further proposed to prove a third arrangement and issue of bonds, which presents a different question, and will be considered separately.

It is not contended that while these obligations remained unpaid in the hands of Kaighn and Cooper, they could have availed anything in defence of this action ; nor, on the other hand, is it denied that if the company had paid Kaighn and Cooper on these collateral securities and on account of this demand an amount equal to it, such payment would have satisfied Paulin's contract to contribute, Kaighn and Cooper would have been reimbursed their outlay by the proper party.

The complaint is that those obligations remaining unpaid, Kaighn and Cooper, after the payment to Champion, surrendered them to the ferry company without the consent of Paulin. The question is, whether the facts stated, if proved, constitute a defence to this action.

They could not be made the foundation of a suit by Paulin in any court. He is not in position to ask an account of these obligations. He has paid nothing—tendered nothing—sustained no damage. It is not contended that he could sustain such action, but that in a court of equity the proposed defence would be available; that Kaighn and Cooper would be held in that court chargeable, as trustees, with the value of these obligations; that the surrender of them was a constructive fraud or breach of trust, and that Paulin would, in an account with them, be entitled to credit on their demand against him for so much as they were worth. There is no doubt this is the rule in that court.

The counsel for the plaintiff in error insisted upon the propriety of this defence here as a rebutting equity to the extent of the value of the obligations; and further, that the surrender of them was a fraud, which constituted a bar to the action. The one view having an aspect *ex contractu*, and the other *ex delicto*.

1st. Is the equity of the case a defence at law?

It is said, in justification of this effort, as it appears to me, to erase the line dividing the legal and equitable jurisdictions, that the action brought by the plaintiff is an equitable action. The answer is, that it is not an equitable action in the sense here intended; on the contrary, it is one of the most ordinary of the legal actions, *assumpsit*, and the counts in the declaration are of the well-known common counts.

The plaintiff declares for a certain sum of money paid by him for the defendant, at his request, on the defendant's promise to repay it. The request and promise are both implied under the circumstances of the case, and the promise is the gist of the action.

It is no more an equitable action than is every action founded upon an implied promise. All of these actions are founded upon principles of equity, which, in its true and genuine meaning, is said to be "the soul and spirit of all law." The common law is not indebted to the courts of equity for the discovery of these principles—they were adopted from the civil law by the common law judges before the system of equity rules and practice had made much progress in England.

This action at common law was based upon a promise implied or a legal liability arising from duties which at the civil law were termed *quasi ex contractu*. It is true that the *assumpsit* by a surety for contribution was adopted more recently, but without any variation of the principle underlying the whole of this class of contracts. When three persons execute a bond, of whom two are sureties, the contract implied at the time of the execution

is, that if the principal fails to pay or perform, the sureties will bear the loss equally. If one of the sureties is left to pay the whole, or more than his proportion, this contract is broken. The other surety becomes thereby liable to an action for so much money paid for him, either in debt upon the legal liability or *assumpsit* upon the implied promise. The recovery does not depend upon the form of action—the same rules would govern this case if the action had been debt, and the defence set up by special plea. There is no more reason for allowing an equitable defence in this action than in every action. Cases are exceedingly numerous where a defendant has an equitable defence to an action on contract. It is the office of a court of equity to relieve him from the sharpness of the legal rule. For this purpose that court is maintained in New Jersey—by its aid, law and justice are harmonized. One who has been induced to give a bond by fraudulent representations as to the consideration has equity in his favor; but can that avail him to repel an action on the bond? One who has bought and paid for land, and entered upon the possession of it without deed has a very excellent equity; but will it serve him as a defence to an action of ejectment? In all such cases the remedy in equity is prompt and efficacious, and at the cost of him who would press the hard action unjustly. In this case the remedy in the court of equity is as easy as at law it is difficult. There, if the securities surrendered were worth anything, Kaighn and Cooper must account for them. The only question would be the amount. In order to ascertain this, an account must be taken involving the value of property pledged by the $30,000 mortgage, and the title to it, the number of persons interested in it, and a statement of their accounts, respectively, with the company, before it could be known how much the *pro ratâ* due to this debt would amount to.

Again, Kaighn and Cooper would not be liable for the surrender of this mortgage, if of less value to this debt

than the coupon bonds issued to Kaighn under the second arrangement; so that on this trial the same process of accounting would be needful to determine the value of the coupon bonds as of the first mortgage, an easy process for the accounting officers in the Court of Chancery, but very uncertain, inconvenient, and inapt in trials by jury. In taking these accounts in this suit, while Kaighn would be bound, the other creditors and the ferry company, not parties, would not be bound by the result. Kaighn might be left to the choice of further litigation or submission to injustice. These difficulties would be avoided, not only in this case but in many like cases, by leaving the equity to be determined, where it properly belongs, in a court of equity, where all persons interested could be made parties and bound by the decree.

But it is further insisted that courts of law have already taken concurrent jurisdiction with courts of equity in cases arising between the creditor and surety and principal and surety, and therefore should do so as to sureties *inter se*. But the law courts in New Jersey have not followed the lead of other states in this. On the contrary, the cases of *The People* v. *Jansen*, 7 *J. R.* 336; *Paine* v. *Packard*, 13 *J. R.* 174; *King* v. *Baldwin*, 17 *J. R.* 384; *Manchester Iron Co.* v. *Sweeting*, 10 *Wend.* 162, in which it was held that if the creditor, on being requested by the surety to sue the principal, while solvent, refused, and the principal afterwards became insolvent, the surety was discharged, have been expressly overruled by the Supreme Court and this court in the case of *Pintard* v. *Davis*, *Spencer* 205, 1 *Zab.* 632. The law courts in this state have gone no further than to approve those cases in which the surety has been held discharged by a new and binding agreement between creditor and principal, changing the terms of the original agreement; and that for the very reason that the surety could not be bound by the new agreement, unless he was a party to it.

The State of New Jersey has not on this subject gone

out of the common law track.   The decision of the Supreme
Court in this case and of the Circuit Court is such as would
be expected from lawyers, whose pride it is to preserve the
common law, without adventuring beyond its prescribed
limits, and to leave the Court of Chancery to its office of
ameliorating the ruggedness of fixed rules, when they are in
particular cases opposed to equity.

Most of the states have no distinct courts of equity; and
when equity and law are both administered by the same trib-
unal, experience shows that the line between the two juris-
dictions constantly grows more and more obscure.   New Jer-
sey has the advantage of such states in having a court estab-
lished for the very purpose, and entirely competent to enforce
equities which have not been covered and secured by legal
rules, and which cannot be so well enforced at law by reason
of the precision of the pleadings therein and the nature of
the trial.

The plaintiff is in court to enforce not an equity in an
equitable action, but a legal right in a legal action.   The
breach of the defendant's contract occurred, and his lia-
bility was fixed before the surrender of the bonds by the
plaintiff.   The cause of action is admitted; it must be
avoided by a legal defence.   The plaintiff having been
obliged to pay money for the defendant, the defendant
owes him a debt.   He must show that it has been dis-
charged.   If the proposed defence operates this discharge,
it is not because it is an equity.   If it has a legal
existence, it must have a legal name.   The debt should
be recovered unless paid or released.   Payment has a
precise meaning.   It may be made in money or goods,
but in whatever mode, the delivery must be made as
payment, and accepted as such.   In this case the de-
livery of the mortgage and bonds was expressly as secu-
rity, and so accepted.   The company and Kaighn did not
mean payment, and therefore there was no payment.
Waiving any difficulty as to the form of the issue, Paulin
cannot claim anything by way of deduction or set-off for

the surrender of these bonds. That right could only result from payment. The bonds unpaid cannot be considered as money received by Kaighn for the use of Paulin. The action for money had and 'received only lies for money or things which have been converted into money. The proposed defence shows neither. Nor is there any release, express or implied. The latter only occurs when the facts show such to have been the intent of the parties, of which there is no pretence in this case.

But it is said there is fraud. In a court of law this must mean actual fraud. Constructive fraud is a creature of the courts of equity not recognized at law, and, in *Sherron* v. *Humphreys*, 2 *Green* 217, expressly repudiated by the Supreme Court. Is there actual fraud? Suppose there is. It is said that fraud vitiates everything; but it is beyond its reach to vitiate a contract made and broken before the fraud occurred. Fraud, in the execution of a contract, avoids it if under seal. Fraud in procuring a contract avoids it, if *not* under seal. But fraud subsequent to a contract, and the breach of it cannot be a defence to an action on the contract in any case whatever. The fraud supposed here is subsequent to the breach of defendant's contract. If it occurred, it is ground for an independent action, but no defence to the action. There is no such thing as a rebutting fraud, any more than a rebutting equity, in a legal court.

But was there any fraud? There was no offer to prove that the bonds were surrendered fraudulently, nor can any fraud be inferred from the offer made.

If the bonds were of no value, there was no injury and no fraud in the surrender of them. If the second arrangement was better than the first, and the third, as proposed, better than the second, there was no fraud. As to this and the value of the bonds, the offer of the defendant is silent.

But it is said that these securities for money are presumed to be worth what they purport to be worth, and

cases are cited to show that in trover for bonds the presumption *prima facie* is, that they are worth the amount they are given to secure, that is, if one takes and tortiously converts to his own use the bond of another, there is such presumption against him, for the reason that he is a wrong-doer. But is there any such presumption against one who holds or surrenders a collateral security? If it be said yes, if he does it fraudulently, the answer is, that is the very thing to be proved. The presumption of value cannot be made the basis for a presumption of fraud. It would be repugnant to the legal mind to establish a charge of guilty fraud in this way.

The further offer of the defendant was to prove an agreement of Kaighn, Cooper, and other creditors with the company, to take bonds for their advances, payable in five years, on condition that all the creditors would accept such bonds. It was not in the offer that all the creditors did accept, or agree to accept, nor that Kaighn did, in fact, accept such bonds. This part of the case was not pressed by counsel upon the argument. If proved, it shows no defence to the action. My conclusion is, that the judgment should be affirmed.

*For affirmance*—Judges BROWN, CORNELISON, and SWAIN.

*For reversal*—Judges HAINES, VAN DYKE, COMBS, KENNEDY, and WOOD.

CITED in ———, 1 *Dill.* (*U. S.*) 157.