DUCAS v. FEDERAL UNION SURETY CO.    (No. 7307.)

(Supreme Court, Appellate Division, First Department.    June 4, 1915.)

1. BAIL ⬤⟾34—CIVIL ACTIONS —LIABILITY OF SURETY—EVIDENCE.

In an action on a bail bond, given under Code Civ. Proc. § 751, for the release of defendant, in custody under a warrant in an action against him for conversion, evidence that defendant was indebted to plaintiff in a larger sum outside of that involved in the action, and that he induced defendant to leave the country to raise money to pay the debt, and letters corroborating the claim that plaintiff induced defendant to leave the country, were admissible for submission to the jury as to whether plaintiff induced defendant to leave the jurisdiction of the court and thereby exonerate the bail from liability.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 128, 129; Dec. Dig. ⬤⟾34.]

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BAIL ☞18—CIVIL ACTIONS—LIABILITY OF SURETY—EVIDENCE.

Under Code Civ. Proc. § 591, providing that, except in an action for a chattel, the bail may surrender defendant, and section 593, providing that, for the purpose of surrendering defendant, the bail, at any time or at any place before he is finally charged, may himself arrest defendant, one executing a bail bond for release of defendant, in custody under a warrant in an action against him for conversion, may protect himself by surrendering defendant, and he is discharged from liability where plaintiff induces defendant to leave the jurisdiction of the court.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 64–82; Dec. Dig. ☞18.]

Appeal from Trial Term, New York County.

Action on a bail bond given under Code Civ. Proc. § 575, by Benjamin P. Ducas against the Federal Union Surety Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Eppstein & Rosenberg, of New York City (Louis B. Eppstein, of New York City, of counsel), for appellant.

Jay C. Guggenheimer, of New York City (Walter N. Seligsberg, of New York City, on the brief), for respondent.

CLARKE, J.   December 20, 1910, in an action brought by the plaintiff against one Robert Loonen for conversion, an order of arrest was granted, and Loonen was taken into custody.   On said day, as bail, the defendant executed a written undertaking, pursuant to section 575 of the Code of Civil Procedure, and undertook, in the sum of $1,000, that the said Loonen should at all times render himself amenable to any mandate which might be issued to enforce a final judgment against him in the said action.   Loonen was discharged from arrest on said bond.   On December 5, 1913, judgment in said action was duly given against Loonen for $1,842.   Thereafter executions against his property and person were returned unsatisfied.   This action is on said undertaking.

[1] The claim made by the appellant is that, Loonen being indebted to plaintiff in the sum of about $18,000 in addition to the amount involved in the action in which the order of arrest was issued, plaintiff consented and induced Loonen to leave New York and go to Paris for the purpose of raising money to settle this indebtedness.   Loonen testified, upon deposition, that he left New York after the issuance of the order of arrest, between the 20th and 25th of January, 1911; that he had talked over matters with plaintiff, in reference to leaving New York, a number of times, everywhere they met during January, 1911. It was conceded that Mr. Guggenheimer was plaintiff's attorney, and was fully authorized to act for him in his business relations with Loonen; that he had seen Mr. Guggenheimer pretty often, in his office, and they talked very freely, perhaps 10 to 20 times, of his intended departure to Europe; that on one or more occasions either Mr. Manning, or Mr. Buchler, or Mr. Levy was there; that, as they were all

interested in a syndicate, they met so often, every day, that he could not remember details for certain; that prior to his departure for Europe he stated to Mr. Guggenheimer that he was anxious to go to Paris to raise funds for the payment of moneys due to plaintiff and others, but, inasmuch as he had been arrested once, he was unwilling to leave the United States unless assured that no affirmative objection would be interposed by Mr. Guggenheimer; that between the 9th of January, 1914, and the 28th of January, 1914, when the execution against his person was returned, he was in France.

Mr. Levy testified that he was one of the attorneys representing Loonen. The attorney of record was William P. Buchler, his partner. On the 17th or 18th or 19th of January, 1911, he phoned Mr. Guggenheimer and told him that Mr. Loonen had informed him that he had been negotiating with Mr. Guggenheimer to settle the financial difficulties between Mr. Loonen and plaintiff, and that Mr. Loonen had informed him that the terms had been arranged, and that before the matter was closed he would like to speak to Mr. Guggenheimer personally. On the 19th of January witness called at Mr. Guggenheimer's office and told him:

"That we would all be very much pleased to see these difficulties settled; that we had considerable trouble with Mr. Loonen and his affairs, and we would do everything we possibly could to assist in a settlement, but that Mr. Buchler, my partner, had signed an indemnity agreement with the Federal Union Surety Company in order to procure this bond of $1,000 for Mr. Loonen, and that Mr. Loonen had informed me, and I knew, that in order to raise the funds to make the settlement he would have to go to Paris, where he resided, where his father, who is reputed to be a wealthy man, resided, and his brother; that we did not like the idea of Mr. Loonen leaving New York, being on that bond, and really being his attorneys—to assume that responsibility for the purpose of effecting this settlement—unless we could feel secured that we would be released from any question that might arise on the bond if Mr. Loonen saw fit not to return. He said: 'What do you want to do about it?' Mr. Guggenheimer said: 'I am writing letters which you will receive, written letters addressed to Mr. Loonen. These terms will cover all of the negotiations that we have had.' I said: 'Well, will you, in addition to that, give us some writing which will warrant us in consenting to Mr. Loonen going to Paris, because, if we thought there was going to be any question about it, we would not permit him to go.' He said: 'What do you want?' I suggested then writing a letter. Mr. Guggenheimer said: 'All right; I will write a letter consenting to Mr. Loonen's departure, so that you need not be concerned about it.'"

He further testified that after this conversation with Mr. Guggenheimer he received from Loonen three letters from Mr. Guggenheimer. These were offered in evidence and excluded. It was after the receipt of these letters that Mr. Loonen left New York, and never thereafter returned within the jurisdiction of the court. The first letter—Defendant's Exhibit A for identification—dated January 19, 1911, addressed to Mr. Loonen, states:

"My Dear Sir: I am authorized by Mr. Ducas to say that he has no objection to your proceeding to Paris, it being understood that your visit is for the purpose of arranging your affairs in such shape as to enable you to finally adjust such differences as exist between you and Mr. Ducas on or before February 15, 1911."

The second letter—Defendant's Exhibit B for identification—is dated on the same day, and also addressed to Mr. Loonen:

"My Dear Sir: I beg to advise you that the total amount due by you to Mr. Ducas is $18,354. Upon payment of this amount on or before February 15, 1911, with interest to date of payment on $12,354, Mr. Ducas will discontinue any proceedings pending, and cancel all claims upon any collateral held by him. Mr. Ducas will also deliver to you a general release. The above is intended to include the delivery by Mr. Ducas of a release of any claim which he may have upon the· Simplicia patents, which were heretofore assigned to him as collateral security." ·

The third letter—Defendant's Exhibit C for identification—is of the same date, referred to the letter bearing even date, and by way of explanation thereof proceeded to state in detail the arrangement agreed upon for a general settlement between the plaintiff and Mr. Loonen, and generally recounted their business arrangements. Defendant also attempted to prove that, prior to the receipt of said letter, Mr. Buchler had refused to permit Mr. Loonen to leave the jurisdiction, and had threatened to surrender him, and that after their receipt had withdrawn his objection. This was excluded.

We think it was error to exclude the letters offered in evidence. Exhibits B and C tend to show that Loonen was indebted to the plaintiff in large sums, outside of that represented by the action on which the order of arrest had been issued, and are apparently the culmination of negotiations had for the purpose of a general settlement, and so corroborate the testimony that there were such moneys owing and that such negotiations had been had. Exhibit A corroborates testimony both of Mr. Loonen and Mr. Levy in regard to the knowledge that the plaintiff and his attorney had, and support the claim that Mr. Loonen's departure from this country was, not only consented to by the plaintiff, but induced, in order that he might raise the funds necessary for a full and final settlement of all the business affairs between them.

[2] By section 591 of the Code of Civil Procedure it is provided that:

"Except in an action to recover a chattel, the bail may surrender the defendant in their own exoneration, * * * before the expiration of the time to answer, in an action against them."

And by section 593 :

"For the purpose of surrendering the defendant, the bail, at any place or at any time before they are finally charged, may themselves arrest him, or, by a written authority, indorsed on a certified copy of the undertaking, may empower another person to do so. * * *

"Bail, in the language of the books, are said (6. Mod. 231) to have their principal always upon a string, which they may pull whenever they please, and surrender him in their own discharge. They may take him up, even upon a Sunday, and confine him until the next day, and then surrender him. * * * As between the bail and his principal, the controlling power of the former over the latter may be exercised at all times and in all places; and this appears to me indispensable for the safety and security of bail." Nicolls v. Ingersoll, 7 Johns. (N. Y.) 145, 155.

"The sureties had always the right to protect themselves by surrendering their principal to the sheriff under section 591 of the Code." Steinbock v. Evans, 55 N. Y. Super. Ct. 278, 280.

Loonen had been arrested under civil process. The condition of the bond under which he was released from custody was that he should at all times render himself amenable to any mandate which might be issued to enforce a final judgment in that action. This he could only do by remaining in the jurisdiction of the court. Any agreement entered into between him and this plaintiff, which permitted him not only to leave the state, but the country, and to go into foreign parts, changed the character of his obligation.

· In Clark v. Niblo, 6 Wend. (N. Y.) 236, 242, the Chancellor said:

"In the view I have taken of the facts stated in the special plea, it is not material for us to inquire whether there was any consideration passing between the plaintiff and the principal debtor which would have enabled the latter to recover for a breach of the contract; neither is it of any importance to the decision of this question whether the bail did or did not consent to the arrangement made with his principal. If the bail was a party to the agreement, and he was so if it was entered into with his assent, there was, unquestionably, a valuable consideration as to him; for he was induced thereby to permit the principal to go out of the state, and to continue his liability as bail for an indefinite period, under an agreement that no proceedings should be had on the judgment for the purpose of charging him in the meantime, and this consideration of damage, risk, or loss to the one party is equally valid as a consideration of benefit to the other. * * * If the bail consented to the arrangement, the promise was made for his benefit and on a valid consideration, and it would be contrary to every principle of justice to permit the plaintiff to proceed and charge the bail in direct violation of the promise not to proceed. The remedy against the bail would in that case be suspended, but would not be destroyed, unless the principal died before his return to New York. If the agreement was made with the principal debtor only, without the privity or consent of the bail, the latter would be absolutely discharged, as it would be a fraud upon him to induce the principal to leave the state, under such circumstances, and then to proceed against his bail in his absence. If this agreement was made with the knowledge and consent of the bail, it was founded on a sufficient consideration, and ought not to have been violated; if without his knowledge, it materially varied his responsibility, by inducing the principal to leave the state under a belief that his bail would not suffer by his absence, and the latter is discharged by the act of the plaintiff. In such cases, where the bail is actually injured by the improper conduct of the creditor amounting to a fraud upon the bail, no consideration as between the creditor and principal debtor is necessary to discharge the surety from his responsibility. West v. Ashdown, 1 Bing. 164."

In Rathbone v. Warren, 10 Johns. (N. Y.) 587, the Chancellor, whose decision was affirmed, had said:

"The respondent, by becoming bail for Jonas Warren, acquired, as a legal incident flowing from the relation in which he had placed himself with Jonas Warren, as his bail, a right of taking his person, at any time, comporting with his own views of obtaining a discharge, and surrendering him in his exoneration, prior to his becoming fixed. For this purpose, a fair deduction from the relative obligation incurred on the part of Jonas Warren was that he should do no act by which he might impair the security of his bail, or withdraw himself beyond the jurisdiction of the court, without his privity and consent. The appellant, John Rathbone, Jr., alleges that Jonas Warren declared his intention to undertake a voyage to some foreign parts. To facilitate that object, the writing set forth in his answer was given, and the appellants' right of issuing execution was suspended. Hence it was imposed on the court to determine whether the appellants had so essentially changed the respondent's responsibility as to discharge him from all liability. By the departure of Jonas Warren to foreign parts, he deprived his bail of the legal custody of his person. It was a species of escape. It de-

prived them of the exercise of the right .of surrendering him when they pleased. It exposed him to numerous contingencies, which might retard his return from, or fix him permanently in, foreign parts—to the hazard of shipwreck, or death, under circumstances which might render it impracticable for the bail to show it in their discharge. These circumstances essentially varied the risk of the bail, and as well might a plaintiff, who aided a defendant, confined on his execution, to escape, maintain a suit against the sheriff for the escape."

And in affirming the court said, at page 595:

"This stipulation undoubtedly induced the principal to leave the state; and the situation of the bail was thereby materially changed, and his risk greatly increased. It appears to me that, on principles of good faith and common honesty, this act must be deemed to have exonerated the bail."

In Culliford v. Walser, 158 N. Y. at page 70, 52 N. E. at page 649, 70 Am. St. Rep. 437, the Court of Appeals cited this case with approval:

"In Rathbone v. Warren, 10 Johns. 586, after judgment had gone against the principal in a bail bond, his creditor agreed with him not to issue the execution for several months, and it was held that the agreement operated to discharge the bail, who are by act and operation of law sureties, and entitled to the benefit on the general principles relative to sureties. In that case, as in this, an effort was made to convince the court that bail should not be so regarded, and Mr. A. Van Vechten, the Attorney General, insisted that the respondent did not stand precisely in the light of a surety, and he advanced, among other arguments, the proposition that the bail could exonerate himself from liability at any time by surrendering his principal, while in cases of suretyship generally the surety has not the power to relieve himself; but the court held otherwise."

It seems to us that the evidence excluded should have been admitted, and that a question of fact was presented for submission to the jury as to whether or not the plaintiff had consented, and induced Loonen to leave the jurisdiction of the court, thereby exonerating the bail from liability.

The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.