## DUCAS v. FEDERAL UNION SURETY CO.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. APPEAL AND ERROR ⊘1195—REMAND—LAW OF THE CASE—INSTRUCTIONS.

On a former appeal in an action on an undertaking to produce the defendant in an action for conversion, the court ruled that the surety was not liable if the obligee consented and permitted the person under bond to leave the country; his obligation being thereby changed to his detriment. On the second trial the court instructed that there was no liability if the obligee consented and induced the defendant to leave the country, but indicated his disapproval of the ruling of the appellate court, and stated that it was contrary to statute, but that the ruling must be followed. *Held*, that the court's statement was error, since the parties on a second trial were entitled to a trial according to the law of the case as settled on the former appeal, without suggestion, which might influence the jury, that it was not correct.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. ⊘1195.]

2. BAIL ⊘34—BOND—DISCHARGE BY ACTS OF OBLIGEE.

Evidence in action on an undertaking to produce the defendant in an action for conversion, as provided for by Code Civ. Proc. § 575, subd. 3, *held* sufficient to show consent of obligee to defendant's leaving country, so as to discharge the obligor.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 128, 129; Dec. Dig. ⊘34.]

⊘For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, New York County.

Action by Benjamin P. Ducas against the Federal Union Surety Company. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

See, also, 168 App. Div. 24, 153 N. Y. Supp. 803.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and SMITH, JJ.

L. B. Eppstein, of New York City (H. A. Rosenberg, of New York City, on the brief), for appellant.

W. N. Seligsberg, of New York City (Clarence M. Lewis, of New York City, on the brief), for respondent.

LAUGHLIN, J. This is an action on an undertaking executed by the defendant on the 20th day of December, 1910, pursuant to the provisions of section 575, subd. 3, of the Code of Civil Procedure, for the discharge from custody of one Loonen, who was held under an order of arrest issued in an action brought by the plaintiff against him for conversion, in and by which the defendant undertook, as bail of Loonen, that he should at all times render himself amenable to any mandate that might be issued to enforce a final judgment against him in the action. On the 5th day of December, 1913, the plaintiff recovered judgment in the action against Loonen for $1,842.10. Execution was issued against the property of Loonen on the 27th day of December, 1913, and after its return wholly unsatisfied, and on the 9th of January, 1914, an execution against the person of Loonen was issued to the sheriff, who made return thereon, on or about the 28th day of the same month, that Loonen could not be found within the county.

The deposition of Loonen was taken in France, at the instance of the defendant, and read upon the trial. It appears thereby that he was a resident of France; that he sailed from New York for France on or about the 22d day of January, 1911, and has never returned, and was in France when the body execution was issued on the judgment; that he was not in prison at that time, but that he had been in custody there a few days in June, 1911, and ever since the 27th day of February, 1914; that prior to leaving for France he had numerous interviews with J. C. Guggenheimer, the attorney for the plaintiff, in which his contemplated leaving was discussed, and in which he stated to Guggenheimer that, having been arrested once, he would not leave for France unless he was assured that no objection would be interposed by Guggenheimer; and that he was informed by Guggenheimer, in effect, that he was at liberty to go anywhere he pleased, and that it was understood that he was at liberty to depart when he pleased.

It appears by the testimony of the plaintiff that the action in which the order of arrest was issued was brought for the conversion of an automobile; that Loonen was further indebted to him in upwards of $12,000; that he was informed by Guggenheimer, either a few days before or a few days after Loonen's departure, that Loonen was going to Paris to raise money to pay off his indebtedness to the plaintiff; that the negotiations with Loonen were had by his attorney; that he never notified the defendant that Loonen intended to leave for Paris;

and that he or his attorney had had communications from Loonen since the latter arrived in Paris with respect to the indebtedness.

The attorney of record for Loonen testified that, a few days before Loonen left New York, he had interviews with Guggenheimer, in which he stated to Guggenheimer that he had been informed by Loonen that a settlement of his liabilities to plaintiff had been arranged between him and Guggenheimer, and that it was necessary for him to go to Paris, where he resided, and where his father, who was a wealthy man, resided, to obtain the necessary funds to make the settlement, and that Mr. Buchler, the law partner of the witness, had indemnified the defendant and was unwilling that Loonen should go to Paris unless he was assured that no claim would be made against him if Loonen did not return; that Guggenheimer replied that he was writing letters, which he would deliver to Loonen, setting forth the terms of the settlement, and that Guggenheimer at his request also promised to write a letter consenting to Loonen's departure for Paris; and that Loonen, before leaving, presented three letters to him written by Guggenheimer.

On a former trial those letters were excluded; and on appeal this court held that to be error, and reversed the judgment. Ducas v. Federal Union Surety Co., 168 App. Div. 24, 153 N. Y. Supp. 803. The letter *bearing on the consent* of the plaintiff to the departure of Loonen is quoted in the opinion of this court on the former appeal. The other letters were written on the same day. One of them states that the whole amount due from Loonen to the plaintiff was $18,354, and that a general release would be executed on payment of the amount on or before February 15, 1911, which is the date stated in the letter quoted in the opinion of this court on the former appeal as the date on which the settlement was to be made after Loonen arranged therefor in Paris. The other letter relates to the same matters, but goes more into detail as to the nature of the claims and the basis of the settlement.

Guggenheimer denied having had the interview with Loonen's attorney, or that he agreed to write a letter consenting that Loonen might depart from the state; but he admitted that he had negotiations with Loonen with respect to the settlement of the plaintiff's claims against him, that Loonen asked for his consent to go abroad, that he informed Loonen that he did not need his consent and was at perfect liberty to go abroad, that he agreed that he would not lock Loonen up or interfere with his going abroad, and stated that he had no objection thereto, and wrote the letter. He claims, however, that he positively refused to consent to Loonen's going, and refused to give a letter consenting thereto; but he says that, in answer to Loonen's request for a letter consenting to his leaving, he replied:

"I will give you all the letters you want, but I am not going to give you any consent that you do not need."

He also testified that he understood that Loonen desired the letters with respect to the indebtedness for the purpose of presenting them to his father and to some one in France from whom he expected to obtain the money; that he knew that Loonen was unable to pay the indebtedness, and was going to France to endeavor to raise the money, and that he wrote the letter quoted in our former opinion at the

request of and to assure Loonen that he would not be arrested; but he admits that Loonen said that he would not leave unless he received such a letter, and that he was not having Loonen watched, and that, therefore, unless Loonen notified him what steamer he was sailing on, he was in no position to know. It is argued from this that Loonen must have known that he could have sailed without danger of arrest at the instance of the plaintiff, especially as he had given bail on the only claim on which an order of arrest could be obtained, and that, therefore, notwithstanding the form of the letter, which is to the effect that plaintiff had no objection, it was fairly to be inferred that it was intended as a consent, and, at least, to enable, if not to induce, Loonen to go to France to raise money to settle with plaintiff.

[1] The defendant pleaded as separate defenses that, without its knowledge or consent, the plaintiff had *consented* to Loonen's departing from the state and going to France to enable him to raise money to adjust his liabilities to the plaintiff, and that the plaintiff had *connived* at Loonen's departure from the state. In the opinion written on the former appeal by Mr. Justice Clarke for a unanimous court, the law applicable to these defenses was declared, and we pointedly held that *any agreement* entered into between the plaintiff and Loonen, which *permitted* him to leave the state and country and go to foreign parts without the consent of the defendant, changed the character of its obligation, which was in the nature of that of a surety; and we stated that such an agreement would deprive the defendant of its right to take into custody and surrender its principal at any time, and quoted at length from authoritative precedents in which it had been so adjudged. The learned trial court evidently deemed the decision of this court erroneous and in conflict with the provisions of section 599 of the Code of Civil Procedure, in which the Legislature has enumerated certain defenses to such an action, and failed to instruct the jury properly on the issues submitted to them. The justice presiding at the trial erroneously instructed the jury that this court had held that it was necessary for the defendant to show that the plaintiff *consented and induced* Loonen to leave the jurisdiction of the court, in order to make out a defense, and added that he did not entirely agree with our decision, and then read said section 599 to the jury, strongly intimating that in his opinion our decision was in conflict therewith; but he then instructed the jury that they must take our construction and be bound by it. We had not referred to that section of the Code, or deemed it necessary to do so, for our decision, as already stated, was predicated on elementary law with regard to the liability of a surety.

Counsel for the plaintiff requested the court to instruct the jury that, if they found that the plaintiff *consented and induced* Loonen to leave the state, there could be no verdict for the defendant unless they also found that such consent and inducement were for the purpose of fraudulently and collusively preventing the service of the execution by the sheriff upon Loonen in the action against him for conversion, to which the court responded:

"Denied under the decision of the Appellate Division."

This was the last statement made to the jury. The court repeatedly ruled that there must be both *consent and inducement,* and refused to charge that consent alone for the purpose claimed here, viz., of going abroad to raise funds for the settlement of plaintiff's claim, would be sufficient. The only attempt made to find support for these instructions in the opinion of this court on the former appeal is in the final paragraph, which is as follows:

"It seems to us that the evidence excluded should have been admitted, and that a question of fact was presented for submission to the jury as to whether or not the plaintiff had consented and induced Loonen to leave the jurisdiction of the court, thereby exonerating the bail from liability."

[2] A careful reading of the opinion as a whole, however, would show that we did not intend to hold that both consent and inducement were necessary, and that this statement was made with respect to the effect of the evidence offered which was excluded. We merely stated that that evidence would have presented a question of fact as to whether or not the plaintiff had consented to Loonen's leaving and induced him to leave the jurisdiction of the court. It is quite clear that the effect of the negotiations between plaintiff's attorney and Loonen was that plaintiff, through his attorney, intended to consent that Loonen might depart for France for the purpose of obtaining money with which to settle his obligations to plaintiff; and if the question of fact had been fairly and impartially presented to the jury by the unqualified acceptance and application of the decision of this court, which was binding on the trial court, it is highly probable that a verdict would have been rendered for the defendant. The defendant was entitled to have the full benefit of the law of the case as declared by this court and as understood by the trial court, without having the force and effect thereof upon the minds of the jurors impaired by criticism or comment on the part of the trial court indicating disagreement therewith. Doubtless the learned trial justice did not realize that his attitude towards our decision was prejudicing the jury with respect to the rights of the defendant, and it is unfortunate that the full protection of their rights render a new trial necessary.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. Order filed. All concur.